ESTELLE JOHNSON *vs.* NORTON HOUSING AUTHORITY.

Bristol. December 8, 1977. — May 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Contract,* Consideration, Under seal, Option. *Option. Eminent Domain,* Right to damages.

No consideration was necessary to make a sealed option agreement binding on the parties to it. [195]

A town's housing authority was permitted by the terms of an option agreement to exercise its option by an eminent domain taking and the land owner's damages, therefore, were limited to the price specified in the agreement. [195-196]

---

PETITION filed in the Superior Court on February 23, 1973.

The case was tried before *Prince, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Max Volterra* for the plaintiff.

*Talbot T. Tweedy* for the defendant.

QUIRICO, J. In an action for damages resulting from an eminent domain taking, judgment notwithstanding the jury verdict was entered for the defendant by a judge of the Superior Court. On this appeal the plaintiff challenges the ruling of the judge that the damages recoverable by her were limited to an amount specified in an option agreement entered into by the defendant and the plaintiff's predecessor in title to the land. We granted direct appellate review, G. L. c. 211A, § 10 (A), and we affirm.

Charles H. Freeman (Freeman) of Norton was the uncle of the plaintiff and the owner of a 53.1 acre parcel of land located in Norton. Through the latter part of 1970 and the early months of 1971 he engaged in a series of discussions with an agent of the defendant Norton Housing Authority (authority) concerning the sale of this land. These meetings culminated in the signing on June 1, 1971, of an option agreement between Freeman and the authority that granted to the latter the right to purchase the land for $20,000 at any time within the next six months. Two months later Freeman died. On October 4, 1971, still within the period specified in the option agreement, the authority ordered that Freeman's land be taken by eminent domain, and on October 7 that order was recorded in the Bristol County registry of deeds.

On February 23, 1973, after a Probate Court judge had decreed that the 53.1 acre parcel passed to the plaintiff, Estelle Johnson, under Freeman's will, she initiated these proceedings by petitioning the Superior Court for an assessment of damages. The $20,000 sum (plus accrued interest), which both parties agreed was the minimum due, was paid over to her shortly thereafter. The case was tried before a

jury and on April 6, 1977, a verdict of $53,100 was returned for the plaintiff. The verdict, however, was vacated by the judge. He concluded that the option agreement was binding on the plaintiff, that it was properly exercised by the authority, and therefore that damages were limited to the $20,000 specified therein. The plaintiff contends that the ruling was in error because (1) the option agreement was made without consideration passing to Freeman and was thus a gratuitous promise and unenforceable, and (2) the eminent domain taking did not constitute an exercise of the option under the agreement.

1. The option agreement begins with a recital that it was made "[i]n consideration of the sum of One Dollar ($1) and other valuable consideration in hand to the undersigned [Freeman] paid." [1] Both parties acknowledge, however, that the dollar was never paid. On this basis the plaintiff argues that the agreement is unenforceable. We recognize that the circumstances here do cast doubt as to whether there was any consideration. [2] However, we need not decide

---

[1] The option agreement provided in part: "In consideration of the sum of One Dollar ($1) and other valuable consideration in hand to the undersigned paid, the receipt whereof the undersigned (hereinafter called the 'seller'), being the owner or owners thereof, hereby give to the NORTON HOUSING AUTHORITY, (hereinafter called the 'Authority') or its successor, assignee or nominee an option to purchase for the sum of Twenty Thousand and no/100 dollars ($20,000.00) subject to the terms and conditions set forth on the reverse hereof, the following-described lots or parcels of land, with the buildings and improvements thereon and the fixtures and appurtenances thereunto belonging, located in the City/Town of Norton, County of Bristol, Commonwealth of Massachusetts, bounded and described as follows: 53.1 acres of land situate on the southerly side of West Main Street, Norton, Massachusetts, being shown on a plan entitled 'Land Owned by Charles H. Freeman In Norton, Massachusetts E. Otis Dyer Surv'r. 1" = 100' March 15, 1971', said premises being designated by street and number as West Main Street. WITNESS OUR HANDS AND SEALS the day and year above written. Charles H. Freeman (SEAL)."

In addition, the agreement contained a number of separate terms and conditions that prescribed the proper manner for exercising the option and transferring title to the property. See note 5, *infra.*

[2] The mere nonpayment of the dollar does not show conclusively that there was no consideration. It would be sufficient if it could be shown that

whether there was such, since in addition to the recital of consideration the option agreement also contained a recital that it was signed under seal.[3] It therefore has the effect of a sealed instrument. G. L. c. 4, § 9A. *Marine Contractors Co.* v. *Hurley,* 365 Mass. 280, 285 n.2 (1974). No consideration is necessary to make a sealed option agreement binding on the parties to it.[4] Restatement (Second) of Contracts § 24A, Comment c (Tent. Drafts. Nos. 1-7, 1973). 1A A. Corbin, Contracts § 263 (1963). 1 S. Williston, Contracts § 61 (3d ed. 1957). Cf. *Marine Contractors Co.* v. *Hurley, supra* at 285; *Morad* v. *Silva,* 331 Mass. 94, 98 (1954); *Lawrence H. Oppenheim Co.* v. *Bloom,* 325 Mass. 301, 302 (1950). The plaintiff, therefore, took the land at Freeman's death subject to the authority's right under the agreement.

2. The plaintiff also contends that, even if the option were enforceable against her, it was not properly exercised by the authority, and therefore cannot be the basis for determining her damages. The option agreement included a page entitled "TERMS AND CONDITIONS." The first paragraph of this page recited that the authority may exercise the option by sending notice thereof by registered mail to the seller. Whether or not such notice was sent is disputed

---

the dollar was bargained for and that the parties intended that it would be paid in the future, see 1 S. Williston, Contracts § 115B, at 468 (3d ed. 1957), or that there actually was some "other valuable consideration" transferred. See also Restatement (Second) of Contracts § 89B (1) (a) (Tent. Drafts Nos. 1-7, 1973).

[3] The language "WITNESS OUR HANDS AND SEALS" is a recital of sealing within the meaning of G. L. c. 4, § 9A. *Finer* v. *Boston,* 334 Mass. 234, 238 (1956).

[4] We decline the plaintiff's invitation to extend to the circumstances presented here the holding of *Nalbandian* v. *Hanson Restaurant & Lounge, Inc.,* 369 Mass. 150 (1975), which "abolish[ed] the distinction between sealed and unsealed instruments with regard to the doctrine of undisclosed principals." *Id.* at 153. The decision in the *Nalbandian* case was based on our conclusion that the continued recognition of the distinction in the undisclosed principal situation produced results that were in many cases "inequitable and unjust." *Id.* at 156. We have not been shown any comparable injustice that is produced by the recognition of the seal on an option contract.

by the parties. The authority contends that, on October 15, 1971, it mailed notice of the order of taking by certified mail to the executor of Freeman's estate. See G. L. c. 4, § 7, Forty-fourth. On our reading of the agreement, however, the mailing of notice is not relevant because the "TERMS AND CONDITIONS" also allow the authority to take the property by eminent domain without mailing notice. The penultimate paragraph of this page provides that "[n]otwithstanding the prior exercise of this offer, the Authority in lieu of completing the purchase of the above described premises may, at any time prior to closing, proceed to acquire the same by the exercise of the power of eminent domain." [5] The provision goes on to state that, in the event of such taking, the seller agrees to accept the purchase price as specified in the option agreement as the fair market value of the land. We believe that this section, read in light of the entire instrument, was intended to provide to the authority an alternative means of exercising the option. Adequate notice of the taking is provided to the seller by the recording of the order of taking at the appropriate registry of deeds. The authority here complied with the term of the agreement relating to eminent domain takings, and therefore satisfactorily exercised the option.

For the above reasons the judgment of the Superior Court was correct.

*Judgment affirmed.*

---

[5] The provision relating to eminent domain takings stated: "Notwithstanding the prior exercise of this offer, the Authority in lieu of completing the purchase of the above described premises may, at any time prior to closing, proceed to acquire the same by the exercise of the power of eminent domain. The seller agrees and assents to the taking of said premises by eminent domain, agrees and represents that the sum of the purchase price herein set forth is the fair market value of said premises, inclusive of every interest therein, agrees to accept the sum of said purchase price in full satisfaction and discharge of any and all awards and any and all claims and demands for damages, costs, expenses and compensation by reason of said taking and agrees upon the payment of said sum to execute and deliver a satisfaction, discharge and release and all other proper instruments for the conveyance of such title, free and clear as aforesaid, and the accomplishment of said satisfaction, discharge and release, in form and substance satisfactory to the Authority."