JAMES M. KNOTT, SR. *vs.* JOAN RACICOT, executrix,[1] & another.[2]

Worcester. May 3, 2004. - August 10, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Contract,* Under seal, Consideration. *Real Property,* Right of first refusal. *Practice, Civil,* Relief from judgment, Contempt, Correction of record on appeal.

Discussion of the role of seals in the law of contracts. [319-322]

This court reconsidered the common-law presumption of consideration for option contracts executed under seal and adopted the formulation of the Restatement (Second) of Contracts § 87(1) (1981) that an offer is binding as an option contract if it is in writing and is signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time, or if it is made irrevocable by statute [322-323]; however, this court did not make its ruling applicable to a Superior Court judge's granting of summary judgment in a civil action for specific performance of a purchase and sale agreement, because retroactive application of the court's ruling was not appropriate, in that it would disturb the contract rights and expectations of a potentially sizeable class of parties, and because the sealed contract at issue (a right of first refusal regarding a commercial property) met the criteria set out in Restatement (Second) of Contracts § 87(1) [324].

In a civil action for specific performance of a purchase and sale agreement, the judge properly denied the plaintiff's posttrial motion, pursuant to Mass. R. Civ. P. 60 (b) (2) and (3), 365 Mass. 828 (1974), for relief from judgment on the grounds of newly discovered evidence and fraud, where the plaintiff failed to sustain his burden of proving either that the evidence could not have been timely discovered or that the alleged conduct rose to the level of a deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner [324-327]; moreover, there was no merit to the plaintiff's contention that the judge erred in not conducting an evidentiary hearing on a contempt complaint, where the plaintiff did not request a hearing at the time [327]; further, the judge did not err in refusing to "correct" the appellate record pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979), by adding the plaintiff's opposition to the intervener's motion for temporary orders and the plaintiff's answer and "cross claim" to the contempt complaint to the record [327].

[1] Of the estate of Louis S. Racicot, also known as Louis J. Racicot, Jr.
[2] Deborah Kay Neumann.

CIVIL ACTION commenced in the Worcester Division of the Probate and Family Court Department on March 30, 2001.

The case was heard by *Joseph Lian, Jr.,* J., and posttrial motions and a posttrial complaint for civil contempt, filed on November 5, 2001, were also heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Warren G. Miller (Henry T. Dunker, Jr.,* with him) for the plaintiff.

*Kenneth J. Mickiewicz (Samuel B. Moskowitz* with him) for Joan Racicot.

*Brian J. Buckley* for Deborah Kay Neumann.

MARSHALL, C.J. For centuries under the Anglo-American common law, contracts executed under seal have conclusively been held to import consideration; the seal itself substitutes for the actual exchange of value between promisee and promisor. See, e.g., *Schuster* v. *Baskin,* 354 Mass. 137, 141 (1968). We are now asked to abolish the common-law presumption of consideration for option contracts[3] executed under seal. At issue is the validity of a right of first refusal[4] executed as a sealed contract between an owner of property and a tenant. The plaintiff, a potential buyer of the property, sought to invalidate the right of first refusal for lack of consideration. A Probate and Family Court judge found that consideration is not required for a sealed contract. The Appeals Court affirmed. *Knott* v. *Racicot,* 60 Mass. App. Ct. 1104 (2003). We granted the plaintiff's application for further appellate review and conclude that no sound legal justification exists for maintaining the common-law fiction that an option contract executed under seal conclusively imports consideration, and we adopt the position of the Restatement

---

[3] "An option is simply an irrevocable offer creating a power of acceptance in the optionee." *Stapleton* v. *Macchi,* 401 Mass. 725, 729 n.6 (1988).

[4] "A right of first refusal provision is designed to afford the holder protection against a sale to others. That protection is only effective if, in the event the owner has elected to sell the property, the holder . . . has a realistic opportunity to meet the offer the owner has elected to accept." *Roy* v. *George W. Greene, Inc.,* 404 Mass. 67, 71 (1989), *S.C.,* 408 Mass. 721 (1990). "On notice of receipt of a bona fide offer from a third party, a right of first refusal ripens into an option to purchase according to its terms." *Greenfield Country Estates Tenants Ass'n* v. *Deep,* 423 Mass. 81, 89 (1996).

(Second) of Contracts § 87(1) (1981) concerning the validity of such contracts. However, for reasons we discuss below, our conclusion does not affect the judgment of the Probate Court, which we now affirm.

1. *Background.* We summarize the relevant facts and procedural history from the judge's amended findings of fact and elsewhere from the undisputed record, as necessary. We reserve for later discussion certain facts related to posttrial motions.

Louis S. Racicot (decedent) owned the Linwood Mill (property), a commercial property located in Northbridge and Uxbridge. In June, 1997, The Maiden Merchant International Incorporated entered into a written lease with Linwood Mill Realty, Inc. for office space in the property. The decedent signed the lease as president of Linwood Mill Realty, Inc., and the defendant Deborah Kay Neumann signed as chair, chief executive officer, and founder of Maiden Merchant. Neither Maiden Merchant nor Neumann ever paid rent for the leased space. However, Neumann provided services to the decedent without payment, including negotiating with other tenants, running errands, and permitting the decedent to use her telephone and facsimile machine.

On June 12, 1998, the decedent and Neumann executed a one-line document purporting to give Neumann a right of first refusal to purchase the property (first right of first refusal).[5] The Worcester County registry of deeds refused to record it. The decedent and Neumann then asked an attorney to prepare a right of first refusal in a form the registry would record. The attorney sent the decedent and Neumann a generic right of first refusal that he had printed from a legal forms software program and into which he had inserted their names and addresses (second right of first refusal). The preprinted portion of the second right of first refusal recited that it was executed "under seal" and "[f]or good and valuable consideration, the receipt

---

[5]The entire substance of the first right of first refusal is as follows: "To Whom It May Concern: In the event that the Linwood Mill, in Linwood, MA, is put up for sale, the first right of refusal will go to Deborah Kay Neumann, presently a tenant in said mill." The document was signed by the decedent as "Owner" and Neumann as "Tenant," and was notarized.

whereof is hereby acknowledged." Under the terms of the second right of first refusal, the decedent agreed not to sell the property prior to January 1, 2004, to a third party without first notifying Neumann of the third party's acceptable bona fide offer to purchase, and offering Neumann the opportunity to purchase the property on the terms recited in the bona fide offer. Further, Neumann was required to purchase the property within ninety days of notifying the decedent of her intention to do so. The second right of first refusal also provided for conveyance of the property with good and marketable title, subject only to the encumbrances referenced in the bona fide offer. On December 22, 1998, the second right of first refusal, signed by the decedent and Neumann and notarized, was filed in the Worcester County registry of deeds and recorded.

Some time thereafter, the decedent received an acceptable bona fide offer from Riverdale Mills Corporation, an entity owned and controlled by the plaintiff, James Knott, to purchase the property for $350,000. Through counsel, the decedent notified Neumann of the offer on January 18, 2001, "[i]n accordance with" the second right of first refusal. Two days later, on January 20, Knott and the decedent entered into a purchase and sale agreement. The purchase and sale agreement specifically referenced Neumann's right of first refusal; it appended the second right of first refusal as an exhibit. On January 25, 2001, the decedent and Knott amended the purchase and sale agreement (amendment) to provide that the decedent would grant Knott a mortgage on the property if Knott advanced certain funds to prevent foreclosure and made certain property repairs.[6] Subsequently Knott paid approximately $174,000 in taxes and expenses for the property. On January 26, 2001, Neuman hand delivered written notice to the decedent's attorney that she intended to exercise her right of first refusal pursuant to the terms of Knott's offer. On January 30, 2001, the decedent died.

On March 30, 2001, Knott commenced a civil action against the decedent's estate for specific performance of the purchase

---

[6]In a later proceeding for contempt brought by Neumann, the judge found that Neumann was never made aware of the amendment or of the second mortgage in Knott's favor granted pursuant to it.

and sale agreement. See G. L. c. 204, § 1. Joan Racicot, the decedent's widow and executrix (executrix), moved to add Neumann as a party defendant pursuant to Mass. R. Civ. P. 19 (a) (2), 365 Mass. 765 (1974). There followed various counterclaims and cross claims among the parties. Of significance here, Neumann filed a verified cross claim and counterclaim for specific performance of the right of first refusal, and Knott asserted as an affirmative defense that the right was void for want of consideration.[7]

The pending litigation did not deter the parties from pursuing their claims privately. On April 26, 2001, Knott delivered to Henry Lane, an attorney representing both the estate and the executrix, a check made payable to the estate for the agreed purchase price of the property minus Knott's $50,000 down payment and sums advanced under the amendment. Lane deposited the check into his client escrow account. That same day, April 26, Neumann's attorney, Mark L. Donahue, met Lane at the Worcester County registry of deeds and on behalf of his client tendered a check for $350,000 payable to the estate and drawn on the account of Donahue's law firm. Because a mortgage on the property prevented Lane from delivering a good and sufficient quitclaim deed to Neumann, as both the right of first refusal and the purchase and sales agreement required, Donahue did not leave his client's check with Lane. Instead he had Lane sign the check stub acknowledging the date and place that the check had been tendered, then left the registry with check in hand.

Trial was held on June 28, 2001. The judge entered his findings of fact and conclusions of law and his judgment on August 15, 2001, and amended his findings and conclusions on September 14, 2001, in response to a motion filed by Knott. The judge did not address whether Neumann gave actual consideration for the right, stating that "[c]onsideration is presumed in an agreement under seal. See *Schuster* v. *Baskin*, 354 Mass. 137, 141 (1968)." He ordered the estate to convey

---

[7]Neumann also sought, and on April 24, 2001, obtained, a restraining order preventing the executrix from transferring or encumbering the property for a period of sixty days.

the property to Neumann pursuant to the right of first refusal.

Knott appealed. He also sought, but failed to obtain, a stay of the judgment, first in the Probate and Family Court and then in the Appeals Court. Knott next moved for relief from judgment on grounds of newly discovered evidence and fraud pursuant to Mass. R. Civ. P. 60 (b) (2) and (3), 365 Mass. 828 (1974), and moved to correct the appellate record pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979). The judge denied both posttrial motions. In an unpublished memorandum pursuant to its rule 1:28, the Appeals Court affirmed the judgment and the orders. It also rejected Knott's appeal concerning a posttrial contempt complaint brought by Neumann against Knott and the executrix. We granted Knott's application for further appellate review.[8]

2. *Sealed option contract.* To understand the role of seals in the law, some background is useful. Seals have a venerable history in our law of contracts. In medieval England, a time when most adults were illiterate, unable even to sign their names, contracts routinely were executed "under seal." That is, each party impressed on the physical document a wax seal or other mark bearing his individual sign of identification. H.O. Hunter, Modern Law of Contracts § 7:2 (2003). Under the common law, the seal became proof of the parties' identities and the document's authenticity, and loss or destruction of the sealed contract terminated the bargain. *Nalbandian* v. *Hanson Restaurant & Lounge, Inc.*, 369 Mass. 150, 154 (1975). Moreover, the seal was said to import consideration, substituting for the actual giving of such. See, e.g., *Schuster* v. *Baskin, supra* ("Because under seal, the consideration, if any, was immaterial"). See also 17 Am. Jur. 2d Contracts § 105 (2004) ("At common law . . . a seal was deemed to dispense with, or raise a presumption of, consideration"); 1 S. Williston, Contracts § 2:14 (4th ed. 1990 & Supp. 2003). Over time, simply the words "under seal" or a similar phrase appearing in a mass-produced, form contract became sufficient to invest that document with the privileged status of a sealed instrument. See

---

[8]Although the executrix did not appeal to the Appeals Court or to this court from the judgment or any order of the judge, she submitted a brief in this court supporting Knott's positions and appeared at oral argument.

G. L. c. 4, § 9A, inserted by St. 1929, c. 377, § 2.[9] See, e.g., *Marine Contractors Co.* v. *Hurley*, 365 Mass. 280, 285 n.2 (1974) (recitation in contract that parties have "set their hands and seals" to agreement sufficient pursuant to G. L. c. 4, § 9A, to create sealed contract).

Despite its lengthy pedigree, however, the sealed contract doctrine has been under heavy assault at least since the days of the Industrial Revolution. See *Nalbandian* v. *Hanson Restaurant & Lounge, Inc., supra* at 155 (citing to early criticisms of doctrine); *Hartford-Connecticut Trust Co.* v. *Divine*, 97 Conn. 193, 195 (1922) (same). In recent decades the majority of American jurisdictions have either abolished or significantly eliminated the distinction between sealed and unsealed contracts. See generally 1 S. Williston, Contracts, *supra* at § 2:17 (table of statutory provisions modifying or abolishing distinction between sealed and unsealed instruments); H.O. Hunter, *supra* at § 7:2 ("More than one-half the states have abolished the distinction between sealed and unsealed instruments, and § 2-203 of the Uniform Commercial Code . . . abolishes the distinction for sales of goods"). Today the Commonwealth is one of the minority of American jurisdictions that have carried over significant elements of the sealed contract doctrine to the Twenty-first Century. See, e.g., H.A. Alperin & L.D. Shubow, Summary of Basic Law § 7.25 (3d ed. 1996) (actual consideration unnecessary for sealed contracts). Compare G. L. c. 260, § 1, First (twenty-year statute of limitations on sealed contracts), with G. L. c. 260, § 2 (six-year statute of limitations on contracts not under seal).

Nevertheless, the sealed contract doctrine has also "eroded

---

[9]General Laws c. 4, § 9A, provides: "In any written instrument, a recital that such instrument is sealed by or bears the seal of the person signing the same or is given under the hand and seal of the person signing the same, or that such instrument is intended to take effect as a sealed instrument, shall be sufficient to give such instrument the legal effect of a sealed instrument without the addition of any seal of wax, paper or other substance or any semblance of a seal by scroll, impression or otherwise; but the foregoing shall not apply in any case where the seal of a court, public office or public officer is expressly required by the constitution or by statute to be affixed to a paper, nor shall it apply in the case of certificates of stock of corporations. The word 'person' as used in this section shall include a corporation, association, trust or partnership."

considerably" in the Commonwealth. *Nalbandian* v. *Hanson Restaurant & Lounge, Inc., supra.* While much of the change has been by statute,[10] the court also has modified the common-law principles of sealed instruments. Thirty years ago, for example, in the *Nalbandian* case this court abolished the common-law sealed contract doctrine with respect to contracts executed on behalf of an undisclosed principal. The case concerned a contract for the sale of real property executed by the buyer and an individual who was the agent of an undisclosed principal, the corporation of which he was president. *Id.* at 151-152. On the plaintiff's suit for specific performance of the agreement, a Superior Court judge awarded summary judgment to the defendant corporation on the ground that, as an undisclosed principal to a sealed contract, it could not be liable thereunder. *Id.* at 153. See *Seretto* v. *Schell*, 247 Mass. 173, 176 (1923). This court noted that the undisclosed principal rule could lead to "inequitable and unjust" results. *Nalbandian* v. *Hanson Restaurant & Lounge, Inc., supra* at 156. While disinclined to abolish the sealed contract doctrine in all cases, this court was "unable to perceive any reason to merit preservation of the distinction between sealed and unsealed instruments in the circumstances." *Id.* Thus, the court joined the majority of American jurisdictions in abrogating the distinction between sealed and unsealed instruments with regard to the liability of an undisclosed principal. *Id.* at 156-157.

Other aspects of the sealed contract doctrine remained viable after the *Nalbandian* decision, however. In *Johnson* v. *Norton Hous. Auth.*, 375 Mass. 192 (1978), decided three years later, this court reaffirmed the sealed contract doctrine as part of our

---

[10]See, e.g., G. L. c. 106, § 2A-203 ("The affixing of a seal to a writing evidencing a lease contract or an offer to enter into a lease contract does not render the writing a sealed instrument and the law with respect to sealed instruments does not apply to the lease contract or offer"); G. L. c. 106, § 2-203 ("The affixing of a seal to a writing evidencing a contract for sale or an offer to buy or sell goods does not constitute the writing a sealed instrument and the law with respect to sealed instruments does not apply to such a contract or offer"); G. L. c. 183, § 1A ("No instrument purporting to affect an interest in land shall be void because it is not sealed or does not recite a seal"). See also G. L. c. 106, § 1-107 (modifying prior statutory provisions by eliminating requirement that only written waiver or renunciation of breach of contract claims executed under seal need not be supported by consideration).

common law. The *Johnson* case, like the instant case, concerned a sealed option agreement for the purchase of land. Both parties acknowledged that the nominal consideration of one dollar recited in the agreement had never been paid. The plaintiff argued that the lack of consideration made the sealed agreement unenforceable as a gratuitous promise. *Id.* at 194. She urged us to extend the holding in *Nalbandian* v. *Hanson Restaurant & Lounge, Inc.*, *supra*, to abolish the distinction between sealed and unsealed contracts with regard to the giving of consideration. *Johnson* v. *Norton Hous. Auth.*, *supra* at 195 n.4. This court declined, concluding that the plaintiff had failed to demonstrate a "comparable injustice" to the unfairness present in the *Nalbandian* case, that would justify departure from the common-law rule. *Id.*

We now reconsider. Whatever the merits of upholding the common-law sealed contract doctrine may have been when *Johnson* v. *Norton Hous. Auth.*, *supra*, was decided, they seem far less apparent today, when option contracts are often an important part of business, professional, employment, and investment transactions. See, e.g., *Baccanti* v. *Morton*, 434 Mass. 787, 794-795 (2001) (discussing unvested stock options as property distributable on divorce). Questions concerning the validity of option contracts are simply too important to our highly literate, highly mobile society to be decided by formalities that have lost all practical utility. As the Legislature has recognized, the written signature has replaced the wax impression as the natural formality authenticating a document.[11] See note 10, *supra*. Thus we require no showing of injustice to conclude that the giving of consideration, a necessary element of ordinary (simple or informal) contracts, should be required

---

[11]The case for modifying a common-law rule of commerce that has outlived its usefulness was well stated by Chief Justice Lemuel Shaw 150 years ago: "It is one of the great merits and advantages of the common law, that instead of a series of detailed practical rules, established by positive provisions, and adapted to the precise circumstances of particular cases, which would become obsolete and fail, when the practice and course of business, to which they apply, should cease or change, the common law consists of a few broad and comprehensive principles, founded on reason, natural justice, and enlightened public policy, modified and adapted to the circumstances of all the particular cases which fall within it." *Norway Plains Co.* v. *Boston & Me. R.R.*, 1 Gray 263, 267 (1854).

for option contracts that happen either to be impressed with a seal or to recite a talismanic formula importing a seal.[12] We henceforth adopt the Restatement (Second) of Contracts § 87(1) (1981): "An offer is binding as an option contract if it (a) is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time; or (b) is made irrevocable by statute."[13] See 3 A. Corbin, Contracts § 11.7 n.1 (rev. ed. 1996) (under § 87[1], "the seal is not listed as a method of validating an option contract"). To the extent that prior cases are inconsistent with our ruling today, see, e.g., *Johnson* v. *Norton Hous. Auth.*, *supra*, we overrule those cases.[14]

---

[12]We do not consider Neumann's argument, raised for the first time on appeal, that the right of first refusal could be construed as a gift from the decedent to Neumann. See *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 67 (1982) (appellate court ordinarily will not consider argument raised for first time on appeal).

[13]Restatement (Second) of Contracts § 87(2) (1981) states: "An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice." We have previously adopted these principles. See *Cataldo Ambulance Serv., Inc.* v. *Chelsea*, 426 Mass. 383, 386 n.6 (1998).

[14]The parties have not asked us to consider abolishing the conclusive presumption of consideration for other contracts executed under seal, and we not decide that issue here. To the extent that the conclusive presumption remains a part of our common law, however, we note that the Commonwealth is in the distinct minority of United States jurisdictions. See generally 1 S. Williston, Contracts § 2:17 (4th ed. 1990 & Supp. 2003) (collecting statutes that have, inter alia, abolished distinction between sealed and unsealed contracts or modified presumption of consideration for sealed contracts); Restatement (Second) of Contracts § 94, Topic 3, Statutory Note at 255-259 (1981) (discussing statutory changes). Eliminating or substantially modifying the common law with regard to consideration for sealed contracts generally has been a statutory matter. *Id.* However, courts have full authority, absent contrary statutory directive, to modify or to abrogate common-law doctrines. See generally *id.* at 256 (by judicial decision, lack of consideration is defense to action on sealed contract in Connecticut).

The case for modifying the presumption of consideration for sealed option contracts might well apply to other types of contracts under seal. See *Kingston Hous. Auth.* v. *Sandonato & Bogue, Inc.*, 31 Mass. App. Ct. 270, 275 n.5 (1991) (noting "ceremony" of sealing as incompatible with "the high volume of documents in contemporary commerce"). See also 3 A. Corbin, Contracts § 10.18 at 439 (rev. ed. 1996) ("seals [have] ceased to function as form and

We shall not, however, invalidate Neumann's right of first refusal[15] for lack of consideration, as Knott and the executrix would have us do. First, retroactivity generally is not appropriate where it would "alter[] rights in Massachusetts contract and property law where issues of reliance might impose hardship on unsuspecting parties." *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 657 (1996). To disturb the contract rights and expectations of a potentially sizeable class of parties who have bound themselves under the previous law would potentially result in hardship. Second, the sealed right of first refusal in this case meets the criteria set out in the Restatement (Second) of Contracts § 87(1), which Knott has urged us to adopt. The agreement is signed by the offeror, recites a "purported consideration for the making of the offer," and proposes a fair exchange of terms within a reasonable time frame. *Id.* The decedent's signature is the "natural formalit[y]" authenticating the agreement, *id.* at § 87 comment a,[16] and "[a] recital in a written agreement that a stated consideration has been given is evidence of that fact as against a party to the agreement." *Id.* at § 87 comment c.[17] We affirm the judgment.

3. *Motion for relief from judgment.* We turn now to Knott's appeal from the posttrial orders. Nearly six weeks after judgment entered, on October 9, 2001, Knott moved for relief from judgment on the grounds of newly discovered evidence, Mass. R. Civ. P. 60 (b) (2), and fraud, Mass. R. Civ. P. 60 (b) (3), and requested an evidentiary hearing. Two affidavits supported the motion. The first, from Paul H. McDonald, a handwriting

should now be jettisoned"). Should the appropriate case present itself to us in the future, we would consider a request to substantially modify or abrogate the conclusive presumption of consideration for other types of sealed contracts, to the extent the Legislature has not directed otherwise. See, e.g., G. L. c. 106, § 2-209 (1) ("An agreement modifying a contract within this Article needs no consideration to be binding").

[15]Because we find that the second right of first refusal is valid, we need not consider the validity, if any, of the first right of first refusal.

[16]We reserve for discussion below the question whether the decedent's signature was forged, as Knott claims.

[17]Our conclusion makes it unnecessary to address Neumann's claim that Knott failed to preserve the issue of sufficiency of consideration for appellate review by not moving for a directed verdict on Neumann's counterclaim. See Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974).

analyst, incorporated a report dated September 28, 2001, in which McDonald concluded that the decedent's signature on the second right of first refusal did not conform to the "known standards" of the decedent's signature on other contemporaneous documents (108 signed checks). The second, an affidavit of Knott, consisted of various statements made on "information and belief," which we summarize in the margin.[18] The judge denied the motion, concluding that Knott failed to sustain his burden of proving either that the evidence could not have been timely discovered or that Neumann's alleged conduct rose "to the level of a deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner," quoting *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 168 (1983). We agree.

Knott's claim that he could not possibly have discovered his alleged evidence of fraud in time to move for a new trial under Mass. R. Civ. P. 59, 365 Mass. 827 (1974), lacks merit. Fraud is one of the very few traditional defenses to the validity of a sealed contract, see, e.g., *Lanman* v. *Lanman*, 206 Mass. 488, 491 (1910), and Knott's counsel had ample opportunity to explore this defense in Neumann's deposition and through cross-examination at trial. He chose not to.[19] More significantly, by his own admission Knott received the unspecified "informa-

[18]Knott averred, among other things, that "information came to me on August 12, 2001, that caused me to have a suspicion" that the decedent's signature on the second right of first refusal had been forged. He also attested on "information and belief" that "known standards" of the decedent's signature were not "discovered" until September 5, 2001, and that his "information and belief [was] that [McDonald] was unable to complete his analysis . . . until he [had the known standards]." Knott further alleged on "information and belief" that, contrary to the notarization appearing on the second right of first refusal, the decedent did not swear and subscribe his signature on that document before a notary public in the Worcester County registry of deeds. Knott's affidavit also alleges on "information and belief" that as of the date of execution of the purchase and sale agreement, the decedent's "eyesight was bad, he did not read adequately, he depended on his wife Joan Racicot [the executrix] to inform him of what he was signing and neither she nor he was aware of the [second right of first refusal]." Neither the executrix nor the notary submitted a supporting affidavit.

[19]Knott asserts that he was prevented from discovering the alleged fraud by the abbreviated time for discovery permitted by the judge's grant of Neumann's request for an early trial date. Significantly, he does not contend that he was prevented from deposing Neumann fully, and in fact asserts that he

tion" that piqued his suspicion of fraud three days prior to entry of judgment, allowing him ample opportunity to move for a new trial in a timely fashion.

The fraud charge itself is also fatally weak.[20] Knott's highly speculative, conclusory affidavit does nothing to counterbalance the abundant evidence produced at trial that the decedent ratified, if he did not sign, the second right of first refusal.[21] See *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 808 n.5 (2002) (support for rule 60 [b] motion must consist of facts and not conclusory statements). Nor was the judge required to accept the expert's affidavit, see, e.g., *Mattoon* v. *Pittsfield*, 56 Mass. App. Ct. 124, 131 (2002), or to hold an evidentiary hearing on Knott's motion for relief from judgment further to probe Knott's claims. See *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 450 (1980). The judge's order on Knott's rule 60 (b) motion was informed by his long involvement with this contentious case and his opportunity at trial to assess the credibility of the witnesses.[22] See *Commonwealth* v. *Carver*, 33 Mass. App. Ct. 378, 381 (1992) (judge "entitled to use his knowledge and evaluation of the evidence at trial in reaching a decision" on criminal defendant's motion for new trial). We discern no "arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice" in the judge's decision. *Kalenderian* v. *Marden*, 46 Mass. App. Ct. 930, 931 (1999), quot-

used the brief discovery period to depose Neumann and the attorney who furnished the form for the second right of first refusal.

[20]Knott's supporting affidavits are insufficient to support a claim either for "fraud" or "fraud on the court." It is thus unnecessary to address Knott's argument that the judge mistakenly considered the motion under Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974), under the more stringent standards of "fraud on the court." See *Paternity of Cheryl*, 434 Mass. 23, 35-36 (2001).

[21]In addition to the evidence already summarized, including the purchase and sale agreement Knott signed that appended the second right of first refusal, a tenant of the property called by Knott testified at trial that she overheard the decedent requesting that Neumann "drop" the right of first refusal because he wanted Knott to have the property. Knott himself testified that the decedent had told him and others that, if Neumann tried to enforce the right of first refusal, he was "going to testify in court that she shouldn't have it, she didn't pay a . . . penny in rent."

[22]The judge made no explicit findings concerning witness credibility. However, he remarked on Knott's repeated inability to remember facts when cross-examined by Neumann's counsel while having a keen and detailed memory when examined by his own.

ing *Greenleaf* v. *Massachusetts Bay Transp. Auth.*, 22 Mass. App. Ct. 426, 429 (1986).

4. *Other posttrial motions.* On November 5, 2001, Neumann filed a contempt complaint against the executrix and Knott for failure to convey the property to her pursuant to the judgment. On November 27, 2001, after a hearing in which counsel for all parties were present and had the opportunity to be heard, the judge ordered the executrix to convey the property to Neumann and to discharge all mortgages on the property not identified in the original purchase and sale agreement. Knott asserts that the judge erred in not conducting an evidentiary hearing. However, Knott did not request a hearing at the time and thus cannot complain of its absence on appeal. See *Guardianship of Hocker*, 439 Mass. 709, 719 (2003), and cases cited. See also *Cooper* v. *Cooper*, 43 Mass. App. Ct. 51, 57 (1997) (evidentiary hearing not required on contempt complaint).

We also conclude that the judge acted properly in refusing to "correct" the appellate record pursuant to Mass. R. A. P. 8 (e) by adding Knott's opposition to Neumann's motion for temporary orders and his answer and "cross claim" to the contempt complaint to the record. The purpose of rule 8 (e) is not to enable counsel to introduce new or extraneous material into the appellate record, but to furnish the appellate courts with an accurate record of the proceedings below. See *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 479-480, cert. denied sub nom. *Costello* v. *Board of Appeals of Concord*, 449 U.S. 1011 (1980). Where the judge did not act on Neumann's motion for temporary orders, the answer and "cross claim" were not timely filed,[23] and Knott's counsel took full advantage of the hearing on the contempt complaint to elaborate his client's claims and defenses, there was no error.

---

[23]Knott was served with the complaint for contempt on November 7, 2001. The summons directed him to file his answer within seven days of the date of service. Cf. Mass. R. Civ. P. 65.3 (f), as appearing in 386 Mass. 1244 (1982) (judge may order responsive pleading filed in less than twenty days). The court did not receive Knott's answer and counterclaim until November 23, 2001.

5. *Conclusion.* For the foregoing reasons, the judgment and orders of the Probate and Family Court judge are affirmed.

*So ordered.*