Neel, Stephen E., J.
Plaintiff EMC Corporation (EMC) seeks an order enjoining its departing employee, defendant David A. Donatelli (Donatelli), from commencing employment with Hewlett-Packard Company (HP), on the basis that such employment would violate a non-compete covenant which Donatelli signed after commencing employment with EMC.
The Court heard the parties on EMC’s motion on Friday, May 1, 2009. Donatelli’s scheduled commencement date with HP is Tuesday, May 5. After hearing, the Court concludes that the covenant which Donatelli signed is an enforceable contract, is not unreasonably broad (at least on its face), and serves legitimate business interests of EMC. The Court further concludes that Donatelli’s intention to work for HP in California, which has a statutoiy prohibition on covenants not to compete, does not warrant denial of EMC’s request for injunctive relief in the circumstances of this case. Finally, the Court will permit Donatelli, if he wishes, to supplement the record with regard to whether he may be employed by HP in a manner which will not prejudice business interests of EMC which are legitimately protected by the non-compete covenant.
BACKGROUND
Donatelli began his employment with EMC in Massachusetts in 1987. He has been and is presently a Massachusetts resident, and worked at EMC’s headquarters in Hopkinton. His most recent title is EMC Executive Vice President and President, EMC Storage *400 Division. The Storage Division produces hardware and software products enabling the storage of information, and accounts for 80% of EMC’s revenue. Donatelli oversaw development of the Storage Division’s key products: EMC Symmetrix and CLARiiON families of networked storage systems, EMC Cel erra network-attached storage (NAS) systems, and EMC Centera content addressed storage (CAS) systems.
On May 13, 2002, Donatelli signed an EMC “Key Employee Agreement” (Agreement) which contains, inter alia, a covenant not to compete (“non-competition covenant” or “covenant”). The covenant states, at paragraph 1(b):
For the twelve month period following the effective date of your termination, for any reason, from the Company, you agree not to directly or indirectly compete with the Company . . . [including] (i) the provision of any services ... as an employee ... to any entity that is developing, producing, marketing, soliciting or selling products or services competitive with products or services being developed, produced, marketed or sold by the Company as of the effective day of your termination.
On Monday, April 27, 2009, Donatelli informed EMC that he was resigning from EMC and that he intended to commence employment with HP on May 5. In a press release dated April 28, HP announced that Donatelli will “serve as executive vice president, Enterprise Servers, Storage and Networking . . . His responsibilities will include the Enterprise Storage and Server (ESS) business unit, which had fiscal year 2008 revenues of $19.4 billion.”
Also on April 27, Donatelli commenced an action against EMC in California Superior Court. The complaint seeks to enjoin EMC from “enforcing the non-competition . . . provision! 1 of the Key Employee Agreement in California,” on the basis that the provision violates the California Business and Professions Code, §17200 et seq.
On April 28, EMC commenced this action against Donatelli. The complaint seeks judgment that Donatelli be restrained and enjoined “from working for Hewlett-Packard, for [sic] disclosing or using any of EMC’s confidential and proprietary information, from destroying, discarding or altering, directly or indirectly, any EMC Property,” and that he be required to return all “EMC Property.”[1]
On April 30, after hearing, the California Superior Court denied Donatelli’s application for temporary restraining order, and scheduled a May 15 hearing on Donatelli’s motion for preliminary injunction, and motion to stay this Massachusetts action.
DISCUSSION
The general principles governing enforceability of non-competition covenants in Massachusetts are well established. As stated in Boulanger v. Dunkin’ Donuts, Inc., 442 Mass. 635, 639 (2004):
A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest. See Marine Contrs. Co. v. Hurley, 365 Mass. 280, 287-88, 289, (1974); All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974). Covenants not to compete are valid if they are reasonable in light of the facts in each case. See Marine Contrs. Co. v. Hurley, supra at 287; Saltman v. Smith, 313 Mass. 135, 145 (1943).
There is little doubt that EMC’s non-competition covenant is necessary to protect its legitimate business interests in this case, in light of Donatelli’s knowledge, by virtue of his position and responsibilities, of EMC’s proprietary and trade secret information; Donatelli does not seriously argue to the contrary. Nor does he contest the reasonableness of the covenant’s one-year restriction.
Instead, Donatelli argues that EMC’s motion for injunctive relief enforcing the non-competition covenant should be denied on several grounds, which the Court addresses below.
I. California Law
Donatelli contends that California law renders the covenant unenforceable because “California’s stronger interests require the Court to set aside the noncompete’s choice-of-law clause” (Opposition at 4), and “EMC’s motion is futile because no California court would enforce the noncompete” (id. at 7). In any event, he argues, “this Court should stay these proceedings pending the outcome in the first-filed California declaratory action.” Id. at 9.
A. Choice of Law
The Agreement provides, at paragraph 7(h): “You [i.e., Donatelli] agree that the appropriate venue for such action [commenced by EMC to enforce the Agreement] is in the state and/or federal courts located in Massachusetts, and you consent to personal jurisdiction in such courts”; and at 7(j): “This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the doctrine of conflicts of law.”
Relying primarily on Massachusetts federal and California state decisions Donatelli argues that Massachusetts courts will invalidate a choice of law provision “(1) when it conflicts with the fundamental policy of another state, (2) when that state has a materially greater interest than the chosen state in the determination of the particular issue, and (3) when the law of that state would apply in the absence of an effective choice-of-law clause.” Opposition, at 4-5.
In support of his first point, Donatelli asserts that “California famously has a fundamental policy against the enforcement of restrictive covenants, while Massachusetts does not.” Id. at 5. It is true that Section 16,600 of the California Business and Profession Code (Section 16,600) voids any contract “by which anyone *401 is restrained from engaging in a lawful profession, trade, or business of any kind . . .” It is also true, as noted above, that Massachusetts common law provides for enforcement of the very same contracts, to the extent that they reasonably protect legitimate business interests of employers. The Court does not agree that California’s legislative policy, at least in this case, is somehow more “fundamental” than, and therefore trumps, Massachusetts’ common law.
With regard to which state has a “materially greater interest” in resolving this dispute, Donatelli cites Roll Systems, Inc. v. Shupe, No. 97-12689-GAO, 1998 U.S. Dist. LEXIS 3142, at *4-6 (D.Mass. Jan. 22, 1998), a case “with similar facts to this one.” Opposition at 5. While acknowledging that, unlike this case, the employee in Roll Systems had actually been working in California for Roll Systems, a Massachusetts company, Donatelli nevertheless argues that, as in Roll Systems, “any ‘performance’ of the noncompete restriction would be in California. California’s strong public policy requires its workers to be free to move around. Thus, California has a greater interest in having its laws govern this dispute than does Massachusetts.” Opposition at 5-6 (emphasis added).
The problem with Donatelli’s argument is that, unlike the employee in Roll Systems, he is not, even now, a California resident, and therefore is not yet one of “its workers” whose freedom of movement California has a strong interest in protecting. The distinction is noted in Roll Systems:
... California has a materially greater interest than Massachusetts has in resolving this dispute. Shupe is a California resident working out of California. Since leaving Roll Systems, Shupe has continued to work and live in California. In these circumstances, California has a strong interest in enforcing its fundamental policy regulating attempted limits on the ability of its citizens to change employment without restriction.
Roil Systems, supra, at 7[2] (emphasis added). Where as here the employee has at all relevant times up to the filing of the complaint lived and worked in Massachusetts, the Court concludes that California’s interest in regulating limits on his future activities there does not outweigh Massachusetts’ interest in applying Massachusetts law to determine the enforceability of his employment agreement with a Massachusetts company.
Finally, Donatelli argues that California law would apply in the absence of a choice of law provision. As EMC points out, however, “Massachusetts courts will enforce [the parties’ choice of law] except where it would result in violation of the fundamental public policy of a state with a materially greater interest in the dispute, and whose law would have applied absent the parties’ contractual choice of law.” EMC’s Memorandum in Support, at 9, citing Hodas v. Morin, 442 Mass. 544, 550 (2004). Where (1) EMC is based in Massachusetts, (2) Donatelli is a resident of and domiciled in Massachusetts, (3) Donatelli entered the Agreement in Massachusetts, (4) Donatelli has worked for EMC in Massachusetts for 21 years, and has performed under the Agreement for the past seven, and (5) California does not have a materially greater interest in the dispute than does Massachusetts, Donatelli’s argument that California law should apply is unavailing.
B. Futility of Enforcing a Massachusetts Injunction in California
Donatelli argues that EMC’s motion is futile because no California court would enforce an order of this Court enforcing the noncompetition covenant. He cites a BLS decision in Aware, Inc. v. Ramirez-Mireles, 2001 Mass.Super. LEXIS 221, *5, [13 Mass. L. Rptr. 257] in which the court, allowing defendant’s motion to dismiss on grounds of forum non conveniens, “doubted the propriety of a Massachusetts court entering a ‘judgment against a California resident, that seems contrary to California public policy, but will have to be enforced in some ancillary proceeding in California.’ ” Opposition at 8, quoting Aware, supra at *5. In Aware, as in Roll Systems, the employee had lived and worked in California, pretermination, for his Massachusetts employer. Those cases therefore presented circumstances in which Massachusetts’ interest was not as strong as in this case, for the reasons noted above.
Where Massachusetts has an interest in the employment relationship of Massachusetts employers and employees that is significant, this Court should not deny an otherwise meritorious motion for injunc-tive relief simply because another state may not enforce the injunction should the Massachusetts employee move to that state. Equitable considerations come into play here. It is one thing for a person who has lived and worked in California to wish to continue to live and work in California, only with a different employer. It is quite another for a Massachusetts resident who has agreed to a non-competition covenant, enforceable in Massachusetts, to choose for his new residence and place of employment the one state where the likelihood of his defeating his non-competition covenant may be the greatest. As Donatelli’s attorney argued at the hearing, “he can escape to California,” and by doing so can escape the obligations of the covenant. While California’s courts may ultimately agree with him, the argument underscores the inferiority of Donatelli’s fairness claim[3] compared with those asserted by California residents in Aware, Roll Systems, and similar cases which he cites.
Donatelli’s claim is further diminished when the Court examines the reasonable expectations of the parties at the time the non-competition covenant was executed. A Massachusetts employer who obtains a non-competition covenant from an employee who at the time lives and works in California is on notice that, *402 should that employee later resign and seek employment with a competitor, the California court will likely strike the covenant. Where the employee lives and works in Massachusetts, however, there is much less reason for the employer, at the time the employee executes the covenant, to expect that it will be unenforceable. Similarly, the Massachusetts employee, unlike his California counterpart, upon signing the covenant has reason to expect that it will be enforced.[4]
C. Stay Pending the Outcome of Donatelli’s California Declaratory Action
Donatelli argues that the Court should stay this case to avoid “piecemeal litigation” and the “real possibility that the two courts might issue contradictory preliminary injunctions.” Opposition, at 9-10. He relies on a summary “Memorandum, Preliminary Injunction and Order Staying Further Proceedings” entered in E Ink Corp. v. Drzaic, SUCV No. 01-1617-BLS (April 19, 2001) (van Gestel, J.).
It goes without saying that different cases in the Superior Court presenting similar issues may be decided differently, depending on the circumstances particular to each case.[5] As the Court has concluded above, the circumstances of this case do not lead to the conclusion that the interest of California in this dispute is so predominant that this Court should stay its decision.
Moreover, the California Supreme Court has acknowledged the interests of foreign states in such disputes, and rejected the argument that a first-filed case in California should operate to stay a later-filed case in the enforcing state. In Advanced Bionics Corporation v. Medtronic, 29 Cal.4th 697 (2002), the employee had resigned from Medtronic and gone to California to work for Advanced Bionics. The latter sued in California, and Medtronics sued in Minnesota. The California Supreme Court observed that, “even assuming a California court might reasonably conclude that the contractual provision at issue here is void in this state, this policy interest does not, under these facts, justify issuance of a TRO against the parties in the Minnesota court proceedings. A parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint. . .” Id. at 706-07. The court goes on to hold that the first-filed rule “was never meant to apply where the two courts involved are not courts of the same sovereignty." Id. at 707.
II. Enforceability of the Covenant under Massachusetts Law
Donatelli’s second basis for opposing injunctive relief is that the non-competition covenant is not enforceable under Massachusetts law, and therefore that EMC has failed to demonstrate a sufficient likelihood of success on the merits. Specifically, he argues that (1) the covenant was not supported by consideration, and (2) that the covenant is broader than necessary to protect EMC’s interests.
A. Consideration
As Donatelli points out, he signed the agreement not when he was hired by EMC in 1987, but in 2002, after fifteen years of employment. Relying on IKON Office Solutions, Inc. v. Belanger, 59 F.Sup.2d 125, 128 (D.Mass. 1999), and several Superior Court decisions, he argues that “an at will employee who receives a noncompete after the start of the employment relationship must get something more than just continued employment for the noncompete to be enforceable.” Opposition at 11-12.
It is fair to observe that the state of Massachusetts law is not crystal clear with regard to whether continued employment alone provides sufficient consideration for a non-competition covenant. However, to the extent that IKON stands for the proposition that, on the facts of that case, mere continuation of defendant’s existing employment was not sufficient, the Court concludes that IKON does not reflect current Massachusetts law. See Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 552 (1935); Sherman v. Pfefferkorn, 241 Mass. 468, 473 (1922); Wilkinson v. QCC, Inc., 53 Mass.App.Ct. 1109 (2001) (unpublished decision) (‘To the extent new consideration was required [to support a non-competition agreement ‘imposed on’ plaintiff when he was already employed], continued employment was the consideration”). Id. at *1.
As this court observed in Lunt v. Campbell, 2007 WL 2935864 (Mass.Superior 2007) (Fabricant, J.) [23 Mass. L. Rptr. 145], cases such as IKON, which “express [es] doubt” about the adequacy of continued employment as sole consideration for a post-employment non-competition agreement, highlight circumstances which “weigh in the Court’s evaluation of equitable factors in deciding whether to enforce by means of the grant of an injunction.” They do not abolish the doctrine that continued employment alone may suffice to support such covenants.
Moreover, there is other evidence of consideration in this case. The cover page of the Agreement, signed by EMC’s president and CEO, states that “[i]n consideration of your employment by EMC and in recognition of the fact that as an employee of EMC you have access to confidential information, I ask that you please review and sign” the Agreement. The second page of the Agreement states that, “in consideration for being provided with access to certain trade secrets and/or confidential and proprietary information in conjunction with your employment with the company, you agree as follows: ...”
Finally, paragraph 7(j) of the Agreement states: “This Agreement is executed under seal.” In Marine Contractors Co. v. Hurley, 365 Mass. 280, 284-85 (1974), the court concluded that a promise not to compete, signed under seal, was enforceable. The court noted that “[t]he rule that consideration is unnecessary when an instrument is under seal has been *403 applied in both actions at law and suits in equity.” Id. at 285. The court also concluded that, apart from the seal, the acceleration of a benefit for the employee provided sufficient consideration.
While the Supreme Judicial Court has since abandoned the doctrine that a seal imports consideration sufficient, without more, with regard to option contracts and contracts executed on behalf of an undisclosed principal, see Knott v. Racicot, 442 Mass. 314, 319-20 (2004), it has not yet done so with regard to non-competition agreements. Indeed, in Knott, the court cites Marine Contractors as an example of cases involving contracts as to which, “over time, simply the words ‘under seal’ or a similar phrase appearing in a mass-produced, form contract became sufficient to invest that document with the privileged status of a sealed instrument.” Id.
Although Massachusetts law regarding the consideration required to support covenants not to compete is not free from doubt, the Court concludes from the foregoing discussion that, in the circumstances of this case, EMC has demonstrated the necessary likelihood of success on the merits of its claim that the non-competition covenant is supported by adequate consideration.
B. Breadth
Donatelli contends that the covenant is broader than necessary to protect EMC’s legitimate business interests, because “EMC seeks to prevent Donatelli from working at HP at all even though only 20 percent of his job overlaps with his previous EMC job duties.” Opposition at 14. Specifically, he argues that, “[wjhile it is true that EMC and HP compete in the storage sector, storage-related responsibilities will make up only about 20 percent of Donatelli’s position at HP, the majority of his responsibilities will relate to servers and networking gear — two areas EMC does not occupy.” Id., at 15.
At the hearing, EMC argued that Donatelli’s argument fails because it is the very integration of EMC’s storage products with servers and networking equipment that gives EMC’s products a competitive edge; in counsel’s words, “it’s all linked.” The Court’s understanding of those facts, let alone the relative merits of the parties’ arguments, is at this stage rudimentary at best. It is beyond dispute, however, that a non-competition covenant must be no broader than necessary to protect an employer’s legitimate business interests. See Boulanger v. Dunkin’ Donuts, Inc., supra, 442 Mass. at 639.
Accordingly, if Donatelli seeks to do so, the Court will permit the parties to develop the record with regard to the following question: of the services that Donatelli would, if permitted, provide as an employee of HP, which constitute services in respect of “products or services competitive with products or services being developed, produced, marketed or sold by” EMC (Agreement, paragraph l(b)(i)), and which do not?
ORDER
For the reasons stated above, the Court concludes that EMC has demonstrated a sufficient likelihood of success on the merits of its claim seeking to enforce the non-competition covenant agreed to by defendant David A. Donatelli when he signed the EMC Key Employee Agreement; that the balance of harms favors EMC; and that the relief sought is not against public policy. Accordingly, the Court enters the following preliminaiy injunction:
Defendant Donatelti is RESTRAINED AND ENJOINED from commencing employment at Hewlett-Packard Company. Donatelli may move to modify this order upon a showing, described in Part II.B. above, that the services which he would provide to Hewlett-Packard do not overlap with products or services being developed, produced, marketed or sold by EMC.
It is further ORDERED that counsel shall schedule and conduct limited written and deposition discovery regarding:
1. the individuals at Hewlett-Packard with whom Donatelli communicated in connection with the possibility of employment at Hewlett-Packard;
2. the responsibilities Donatelli presently understands he would have in connection with his anticipated employment at Hewlett-Packard;
3. documents in Donatelli’s possession, custody or control concerning his anticipated employment at Hewlett-Packard, including but not limited to any employment agreement or written offer of employment, including any drafts thereof, and any response thereto or draft of any such response;
4. (at Donatelli’s option) additional discovery relating to the issue set out in Part II.B. above.

The parties have briefed and argued the dispute on the basis of Donatelli’s impending employment with HP; they have not focused on any threat by Donatelli to take confidential information or fail to return “EMC Property.”

Nor does Roll Systems support Donatelli’s argument that the only relevant “performance” is the employee’s post-termination observance of the noncompetition covenant, which in this case would be in California: “Massachusetts also has a general interest in protecting the legitimate interests of its businesses, like Roll Systems, located here. However, the fact that Shupe’s contract was not performed in Massachusetts substantially decreases the Commonwealth’s interest in having its laws govern this dispute.” Roll Systems, supra, at 7 n.2. The court apparently considered the place of performance of the entire employment agreement, not just the post-employment restrictions. In that case, both the pre- and post-termination performance were in California. Here, by contrast, Donatelli performed his employment contract with EMC prior to his resignation (including his agreement not to compete while employed by EMC, and to protect EMC’s confidential information) substantially, if not entirely, in Massachusetts.

See Oxford Global Resources, Inc. v. Guerriero, No. 03-12078-DPW, 2003 U.S.Dist., 2003 WL 23112398, at *6 *404 (D.Mass. Dec. 30, 2003) (“. . . courts generally find it unfair to apply the law of the non-enforcing state and thereby allow the employee to escape the obligations of the contract by, in essence, fleeing the jurisdiction”).

See Oxford Global Resources, Inc. v. Guerriero, supra, at *6 (“Courts endeavor to protect ‘justified expectations’ formed at the time of contract formation. Neither an employer nor an employee examining an employment agreement could justifiably expect it to be governed by the law of a state that has no relation whatsoever other than the employee will someday happen to be in it when he breaches the contract. See Ferrofluidics [Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463,] at 1467-68 [(1st Cir. 1992)]. Here, neither Oxford [the Massachusetts-based plaintiff] nor any defendant [each of whom worked for Oxford in Massachusetts] could reasonably have anticipated that Texas law would have any relevance to the employment agreements when they were executed, or indeed at any time during defendants’ employment”).

One apparent difference here — while not necessarily determinative — is that in E Ink the employee, Drzaic, was a “former Massachusetts-based employee who had moved to California to work for a competing California-based company.” Opposition at 9. The record in this case reflects that Donatelli is still a Massachusetts resident.