## SHEA L. ROOD *vs.* MICHAEL NEWBERG
## (and a companion case[1]).

No. 96-P-1479.

Essex. May 7, 1998. - November 5, 1999.

Present: WARNER, C.J., SMITH, & JACOBS, JJ.

*Probate Court,* Findings by judge, Attorney's fees. *Undue Influence. Fraud. Will,* Allowance, Undue influence. *Damages,* Interest.

In a proceeding on a will in the Probate Court, the judge's findings of fact were not plainly wrong or clearly erroneous [190-191], and his ultimate findings and conclusions, that a party committed fraud on and exerted undue influence over a testatrix in regard to her will and joint bank accounts, were supported by the evidence [191-193], with the exception of a single trustee bank account payable to that party upon the testatrix's death that had been established more than one year before any fraudulent nondisclosure or undue influence was alleged to have taken place [193-194].

A Probate Court judge correctly ordered prejudgment interest pursuant to G. L. c. 231, § 6H, with respect to money that properly would have been included in an estate except for acts of fraud committed on a testatrix by her grandson. [194-195]

An award of attorney's fees in a will contest and related equitable matter was remanded for reconsideration in light of certain rulings on appeal. [195-196]

PETITION filed in the Essex Division of the Probate and Family Court Department on November 7, 1994.

CIVIL ACTION commenced in the Essex Division of the Probate and Family Court Department on November 22, 1994.

The cases were consolidated and heard by *Edward J. Rockett,* J.

*Marvin R. Finn* for Shea L. Rood.

*Barry Ravech* for Michael Newberg & another.

---

[1]Shea L. Rood *vs.* Estelle Newberg; Michael Newberg; and Arthur J. Frawley, Jr., administrator of the estate of Dora Shaffer.

SMITH, J. Dora Shaffer died on September 25, 1994, leaving a will in which she named her son, Shea Rood (Rood), and her daughter, Estelle Newberg (Estelle), as coexecutors. On November 7, 1994, Estelle petitioned the Probate Court for the allowance of the will. Rood did not join in the petition. Instead, he filed an affidavit of objections to the allowance of the will, claiming that Michael Newberg (Newberg), Estelle's son and Shaffer's grandson, had used undue influence with respect to the will and that the will was invalid for lack of testamentary capacity (the estate action). Rood also brought a complaint in the Probate Court in which he sought an order requiring Newberg to turn over to the estate the proceeds of four accounts in various banks which Shaffer had held jointly or in trust for Newberg (the equity action). According to the complaint, the accounts were as follows:

1. Salem Five Cents Savings Bank

   Dora Shaffer, trustee for Michael Newberg, with approximately $86,000 in a checking account;

2. Eastern Bank

   Dora Shaffer or Michael Newberg, with approximately $52,000 in a savings account;

3. Marblehead Savings Bank

   Dora Shaffer and Michael Newberg, with approximately $3,300 in a checking account;

4. Marblehead Savings Bank

   Dora Shaffer and Michael Newberg, with approximately $57,000 in a savings account.

The estate and equity actions were consolidated, and after a trial the judge issued a memorandum containing his findings of fact and conclusions of law. In the equity action, the judge ruled that Newberg had committed fraud and exerted undue influence over Shaffer and, therefore, had obtained the four bank accounts through improper means. As a result, the judge ordered Newberg to deliver the bank accounts to the administrator with the will annexed so the bank accounts could be administered as part of the estate. In the estate matter, the judge made the same finding of fraud and undue influence but allowed the will except for certain provisions benefitting New-

berg.

Rood filed a motion to amend the judge's findings of fact and conclusions of law to include a conclusion that Estelle had conspired with Newberg to perpetrate a fraud and/or unduly influence Shaffer in regard to the 1992 will. The judge denied the motion. The judge then allowed Rood's request for counsel fees and costs in the amount of $58,143.12 and Estelle's and Newberg's request for legal fees and costs amounting to $27,666.65.

Estelle and Newberg filed a motion to set aside, amend, or supplement the judge's findings or for a new trial, in both the equity and estate actions. The judge denied the motion. Over Newberg's objection, the judge allowed Rood's motion to amend the judgment in the equity matter, seeking interest at the twelve percent statutory rate on the four bank accounts.

Newberg appealed from the decisions entered in the equity and estate matters. Rood, in turn, appealed from the "judgment," as he understood it, that the attorney's fees and costs incurred by Newberg and Estelle should be paid from the residue of the estate. Rood also claimed that Estelle should be stripped of any benefits she received under the will because she acted in concert with her son regarding the fraud and undue influence.

We summarize the judge's findings of fact, supplementing them with undisputed evidence, including a statement of agreed facts submitted by the parties. At her death, Shaffer's gross estate was $841,827. It included thirteen savings or certificate of deposit accounts in her own name totaling $225,867, personal property valued at $14,104, twenty-one survivorship bank accounts and certificates of deposit worth $471,256 and her interest in a home valued at $100,000.

Shaffer had inherited a substantial amount of money when her mother died. From 1972 to 1989-1990, Rood advised her concerning her financial affairs and assisted her in other ways, such as driving her to banks and helping her write checks to pay her household bills.[2] In 1984, Shaffer conveyed ownership of her home, at Rood's suggestion, to Newberg and herself jointly with the right of survivorship because she was fearful that Newberg might marry and move out; Newberg had lived with her since 1971 because Shaffer did not want to live alone.

---

[2]Shaffer had severe arthritis in her hands and, therefore, had difficulty writing or driving a car.

In 1972, Shaffer and Rood opened a safe deposit box at the Security National Bank (Security National). On numerous occasions, Shaffer told Rood that if she ever became seriously ill, he was to take all of her bankbooks and jewelry from the box and place them in his own safe deposit box so that the items would not become part of her estate and be taxed upon her death.

Sometime in 1989 or 1990, Rood, who was an industrial packaging salesman, became very busy with his own business obligations and did not have the time to assist Shaffer with her various errands. Therefore, Shaffer told Rood that Newberg would help her. She also told Rood that she intended to make her checking account at Salem Five Cent Savings Bank a joint account with Newberg for her convenience. On December 21, 1989, Shaffer changed the Salem account to read in her name as "Trustee for Michael Newberg."

On January 28, 1991, Shaffer went to Security National and removed the bankbooks and jewelry from the safe deposit box that she shared with Rood and took those items to her home. On January 30, 1991, Newberg opened a safe deposit box at the Shore Bank in his name and put the bankbooks and jewelry in that box. On January 31, 1991, Shaffer opened a second safe deposit box at the same bank, and, on February 1, she had the box also placed in Rood's name. She closed this box on May 11, 1992.

On April 11, 1991, Shaffer was hospitalized with pneumonia. Because of Shaffer's previous instructions to him to remove her property from the safe deposit box at Security National, Rood went to the bank. However, he did not find the jewelry and bankbooks in the box. That same day, Rood visited Shaffer in the hospital. He told her that he had gone to the safe deposit box and discovered that all of the bankbooks and jewelry were missing. Shaffer had forgotten her instructions to Rood. She also did not remember that she had removed the items herself. Therefore, upon being told that they were missing, Shaffer became extremely agitated and demanded to know why Rood had gone to the safe deposit box. Fearful of aggravating her medical condition, Rood left the room without answering her question.

After he left, Rood told Newberg about the missing bankbooks and jewelry and about his mother's reaction. Newberg told him not to worry because the items were at Shaffer's home in her

dresser drawer. Newberg knew that the items were actually in his safe deposit box.

On several occasions between the time that Shaffer returned home from the hospital until her death, she complained to Newberg about Rood taking the items from her safe deposit box and that she did not trust him. Newberg did not remind her that she, not Rood, had removed the items or that he, Newberg, had placed them in his own safe deposit box.

On June 18, 1991, Shaffer changed her checking account at the Marblehead Savings Bank (Marblehead Savings) to a joint account in her and Newberg's names. She also opened a savings account at the same bank on July 22, 1991, in those names. On April 30, 1992, Shaffer opened yet another savings account in the same names at Eastern Bank. The judge found that these three accounts were made joint accounts because of fraud and undue influence of Newberg.

On October 16, 1992, Newberg drove Shaffer to her attorney's office where she informed the lawyer that she wanted to change her will. Newberg was present both when Shaffer discussed the provisions she wanted and when she told her lawyer that one of the reasons she was changing the will concerned Rood's removing her property from the safe deposit box without her permission. Newberg gave the lawyer a list of bankbooks and dispositive provisions that he had prepared.

On October 23, 1992, Newberg again drove Shaffer to her lawyer's office. The will was then executed in Newberg's presence. Shaffer told one of the witnesses to the will that she was changing her will because Rood had taken items from her safe deposit box and she had a difficult time getting them back. Newberg heard the statement but did not respond or otherwise correct her. In addition, Shaffer gave a durable power of attorney to Newberg that day.

The will, prepared and signed by Shaffer, named Rood and Estelle as coexecutors and also named them as residuary beneficiaries in equal shares. The will provided that any bank accounts in the names of Shaffer and another person shall belong to that other person at the time of Shaffer's death. In the previous will executed in 1986, a similar provision stated that any bank account or other security that Shaffer owned jointly with one of her children shall go to that child at the time of Shaffer's death. Therefore, Newberg would not have received joint or

trustee accounts under the 1986 will.[3] The new will also bequeathed certain furniture and fixtures to Newberg.

The judge found as a fact that Shaffer was opinionated, feisty, stubborn, and narrow-minded; if someone had "wronged" her, she would not likely forgive that person. He also found as a fact that Rood's testimony was more credible than Newberg's.

The judge ruled that Newberg was in a position of trust with Shaffer and had developed a confidential relationship with her and that Newberg violated that relationship by failing to correct Shaffer's mistaken belief that Rood had taken the items from the safe deposit box. The judge ruled that, because of Newberg's failure to act, he had exercised undue influence and perpetrated a fraud on Shaffer in regard to the 1992 will, the three bank accounts that he held jointly with her, and the trustee account at Salem Bank.

On appeal, Newberg claims that the judgment entered in the equity action and the amended decree entered in the estate action must be vacated because the judge's findings of fact were clearly erroneous and the conclusions of law incorrect. He also contends that the judge committed error (1) in awarding prejudgment interest upon the sums in the joint accounts, and (2) in awarding Rood counsel fees and costs without an evidentiary hearing.

1. *The judge's findings of fact and conclusions of law.* Newberg claims that the judge's findings of fact were clearly erroneous because they were not supported by the evidence.

There is no question that the judge's findings of fact were not a model of clarity, because on several occasions he did not separate his subsidiary facts from his ultimate findings.

However, we do not set aside a judge's findings of fact unless they are "plainly wrong" (the standard applicable to probate proceedings to allow or set aside a will), see *Erb* v. *Lee*, 13 Mass. App. Ct. 120, 124 (1982); *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 223 (1986), or "clearly erroneous" (the standard applicable to equitable proceedings), see Mass.R.Civ.P.

---

[3]The judge's findings are not clear on this point. We do not know whether Shaffer had established any joint or trustee accounts with Newberg prior to Shaffer making the 1986 will.

52(a), 365 Mass. 816 (1974).[4] "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). In applying this standard, "the judge's assessment of the quality of the testimony is entitled to our considerable respect because 'it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence.' " *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203 (1986), quoting from *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977).

Here, there was conflicting evidence on practically every aspect of Rood's claims. However, the judge found Rood's testimony to be more credible than that of Newberg. "If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge's choice is not clearly erroneous." *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 751 (1993).

Based on this record, we hold that the judge's findings were supported "on any reasonable view of the evidence, including all rational inferences of which it was susceptible." *T.L. Edwards, Inc.* v. *Fields*, 371 Mass. 895, 896 (1976), quoting from *Bowers* v. *Hathaway*, 337 Mass. 88, 89 (1958).

2. *Sufficiency of the evidence.* Newberg contends that the judge's ultimate findings of fact and conclusions of law that he committed fraud and exerted undue influence on Shaffer were not supported by the evidence.

We note that the judge considered fraud and undue influence together as the ground on which he could invalidate the will provision favoring Newberg and order the four joint bank accounts to be returned to the estate. However, "[i]t is well established that 'fraud' and undue influence are separate and distinct grounds for invalidating a testamentary provision, in the one case the testator proceeding of his own free will but affected by a false representation of a fact which is the inducement for the disposition in question, and in the other the

---

[4]Here, the findings of fact for the probate action and the equity action are the same. There is no essential difference between the two standards of review, however, and therefore no need for separate analysis on appeal.

testator's own will and free agency being destroyed so that what he does he is constrained to do contrary to his own free will." *Wellman* v. *Carter*, 286 Mass. 237, 253 (1934). Therefore, either fraud or undue influence would invalidate the establishment of joint bank accounts or favorable provisions in a will.

The evidence in this matter does not refer to "influence exerted through coercion." *Mirick* v. *Phelps*, 297 Mass. 250, 252 (1937). Rather, it refers to "[f]raud, in the sense of deceit." *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 463 n.7 (1997).

In order to prove fraud by deceit, a plaintiff ordinarily must show that the defendant made a false statement of a material fact with knowledge of its falsity in order to induce the plaintiff to act, together with a reliance by the plaintiff on the false statement to the plaintiff's detriment. *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 8 (1982). See *Wellman* v. *Carter*, 286 Mass. at 253. Here, there is no evidence that Newberg made a false representation or statement of a material fact which was deceptive. See *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942). See also *Kannavos* v. *Annino*, 356 Mass. 42, 49 (1969). Instead, it is undisputed that Newberg said nothing at all to Shaffer about her mistaken accusations against Rood.

Usually, "nondisclosure does not amount to fraud and is not a conventional tort of any kind." *Greenery Rehabilitation Group, Inc.* v. *Antaramian*, 36 Mass. App. Ct. 73, 77 (1994). However, nondisclosure may amount to fraud if a party "is under a duty to the other [party] to exercise reasonable care to disclose the matter in question." Restatement (Second) of Torts § 551(1) (1977). "The exception generally recognized in the field of tort has been given recognition and operation in the law of wills . . . ." 1 Page, Law of Wills § 14.2 (1960). The duty may arise if there is a "fiduciary or other similar relation of trust and confidence between [the parties]." Restatement (Second) of Torts § 551(2)(a). See *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. at 678. Thus, "[t]he duty of honest advice and full disclosure arises where one party reposes confidence in the integrity of another and the other party in advising voluntarily assumes and accepts the confidence." *Reed* v. *A.E. Little Co.*, 256 Mass. 442, 448-449 (1926). "When confidence is reposed and accepted, the person trusted is . . . liable for concealing facts which by reason of the relationship he should disclose." *Id.* at 449.

A confidential relationship does not arise merely by reason of family ties; however, such a relationship "may be found on evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters." *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 444 (1980). "Whether a relationship of trust and confidence exists is a question of fact . . . ." *Ibid.*

In the present matter, Shaffer told her attorney that she was very dependent on Newberg. It was Newberg, not Shaffer, who had prepared and given the list of Shaffer's bankbooks and other items to the attorney at the time of the preparation of the 1992 will. Newberg was present at Shaffer's direction when she discussed the contents of her new will with her attorney. Newberg was also present when Shaffer executed the will on October 23, 1992. Shaffer thereafter gave it to Newberg to put in his safe deposit box, to which Shaffer did not have access. Further, at the time she executed her will, Shaffer gave Newberg a durable power of attorney which she understood gave him full power to handle her financial transactions. Therefore, we agree with the judge that there was a confidential relationship between Newberg and Shaffer.

Because of that relationship, Newberg had a duty to disclose to Shaffer that she was mistaken in her accusations against Rood. Newberg knew that Rood had not taken the items from the safe deposit box and yet he remained silent when he repeatedly heard Shaffer voice her anger because she believed that Rood had taken her property. Further, Newberg was aware that his nondisclosure was affecting Shaffer's disposal of her assets when Shaffer, in his presence, made it known to her attorney that she was changing her will because of her erroneous beliefs regarding Rood's conduct, which beliefs Newberg knew to be erroneous.

Newberg's nondisclosure also affected at least three bank accounts because Shaffer opened or changed those accounts following her quarrel with Rood at the hospital.

However, we do not reach the same result regarding the Salem account opened in December, 1989, in the name of "Dora Shaffer Trustee for Michael Newberg." That account was opened a year and one-half before the incident in the hospital. Shaffer did not alter the status of the account at any time. Thus, Newberg's failure to disclose to Shaffer that Rood had not taken the items had no effect on Shaffer's actions concerning that ac-

count. Although it might be argued that had Shaffer been told of her error she would have removed Newberg's name from the account, that argument is simply too speculative a proposition to sustain. See *Cherick Distribs., Inc.* v. *Polar Corp.*, 41 Mass. App. Ct. 125, 126 (1996).

The judge found that the Salem account was established for Shaffer's convenience. The account was not jointly held (which would have allowed Newberg full access, a luxury which could imply convenience for Shaffer in her weakened state). Rather, the bank's assistant treasurer, in a letter to Rood's attorney, describes that account as "a single ownership account in the name of Dora Shaffer, payable on death to Michael Newberg."

Moreover, the account contained approximately $59,000 when it was opened, but by the time of Shaffer's death it had increased to over $85,000. This stands in contrast to, for example, one of the Marblehead Savings accounts, which held only about $5,000 at the time of Shaffer's death and on which there had been over one hundred checks written, many of them signed by Newberg. Thus, it appears to us that Shaffer intended to maintain full control over the trustee account and for the proceeds to be paid to Newberg upon her death.

This being the case, the proceeds from the Salem account belong to Newberg. The proceeds from the other accounts that are the subject of this dispute belong to the estate.

3. *Statutory interest.* Pursuant to G. L. c. 231, § 6H, the judge ordered Newberg to pay prejudgment interest on the sum of the four accounts, retroactive to the date of the commencement of the suit. General Laws c. 231, § 6H, inserted by St. 1983, c. 652, § 1, provides that, "[i]n any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action . . . ." Section 6B fixes the interest rate at twelve percent. We affirm the award of interest as to the Marblehead Savings accounts and the Eastern Bank account, but not the Salem account, and therefore the sum on which interest is to be based must be recalculated.

Newberg argues that he should not be required to pay prejudgment interest because he did not have the use or control of the money while the case was proceeding and because the order of the court does not constitute an award of damages.

" 'Damages' is the word which expresses in dollars and cents the injury sustained by a plaintiff." *Turcotte* v. *DeWitt*, 333 Mass. 389, 392 (1955). It is a "fundamental proposition that interest is awarded to compensate a damaged party for the loss of use or the unlawful detention of money." *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988). "The damaged party is entitled to a return on the money that the party would have had but for the other party's wrongdoing." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990).

Here, but for Newberg's acts of fraud, the sum of the three accounts would have been included in the residue of Shaffer's estate. The residue, in turn, is to be shared equally by Rood and his sister, Estelle. Thus, Rood has been deprived of the use of one-half of the sum of the accounts, and not of the entire amount as held by the judge. Therefore, Newberg must pay prejudgment interest on the amount of one-half of the sum of the three accounts to which the estate is entitled.

4. *Civil conspiracy*. Rood argues that there existed a conspiracy to commit fraud between Newberg and his mother. This claim is without merit.

5. *Counsel fees*. Finally, both parties appeal the judge's distribution of counsel fees. However, it is not clear in what manner the judge ordered that attorney's fees be paid. In both Newberg's main brief and Rood's brief, the parties assert that the judge ordered payment of Rood's fees to be divided between Newberg and the estate and ordered Newberg's fees to be paid entirely by the estate. In Newberg's reply brief, he asserts that the judge ordered that his fees be paid one-half by the estate and the other half by himself. This view seems more consistent with Rood's rather vaguely worded motion to clarify allowance of counsel fees, which the judge allowed without elaboration.

Although the award of counsel fees is left to the discretion of the Probate Court, see G. L. c. 215, §§ 39A, 39B; *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 447 (1980), it is apparent that we cannot evaluate with confidence the propriety of this aspect of the judge's order. As a result, and in view of the decisions we reach in these cases, we remand the issue of counsel fees to the Probate Court for a hearing. The judge should prepare written findings to support his order, taking into account such factors as the size of the estate, the merits of the claims raised, the benefit the litigation has conferred upon the estate, and the degree to which the various parties

have succeeded in their claims. *Clymer* v. *Mayo*, 393 Mass. 754, 772-773 (1985).

6. *Summary.* So much of the judgment in the equity action as orders Newberg to deliver the Salem Five Cents Savings Bank account (#86-6016876) to the administrator with the will annexed to be administered as part of the residue of Shaffer's estate is reversed. In all other respects, the judgment is affirmed. The order in the equity action directing Newberg to pay prejudgment interest on the sum of "four bank accounts" is vacated and the matter is remanded to the Probate Court for recalculation of prejudgment interest, to be paid on one-half of the total amount of money, as of the time of the decedent's death, in the three accounts to which the estate is entitled in accordance with this opinion. So much of the amended decree in the estate action as orders that Newberg shall not be entitled to the sum on deposit at Shaffer's death in the Salem Five Cents Savings Bank account (or any accumulations thereon) and that such account shall become part of the residue of the estate is reversed. In all other respects, the amended decree is affirmed. The orders for payment of counsel fees are vacated and the issue of counsel fees is remanded to the Probate Court for a hearing thereon.

Rood's request for double costs and attorney's fees on appeal is denied.

*So ordered.*