## Eddy C. Gaw vs. Maureen F. Sappett.

No. 03-P-9.

Worcester. April 13, 2004. - November 3, 2004.

Present: Perretta, Laurence, & McHugh, JJ.

*Divorce and Separation,* Relief from judgment, Division of property.

The judge in a divorce action correctly concluded that the existence of the husband's pension did not constitute newly discovered evidence warranting relief from judgment under Mass.R.Dom.Rel.P. 60(b) (1975), where the existence of the pension had been revealed to the wife in the course of prejudgment discovery [408]; moreover, the judge did not abuse her discretion in concluding that the wife had failed to demonstrate, by clear and convincing evidence, that the husband's failure to list two properties as assets was the result of fraud [408-410], and the wife did not properly preserve the argument that even if she could not prove the husband's intentional fraud in omitting the two properties from his disclosures she was entitled to relief on the ground that the nondisclosures constituted "other misconduct," which is governed by a less stringent standard under rule 60(b)(3) [410-415].

Complaint for divorce filed in the Worcester Division of the Probate and Family Court Department on November 1, 1995.

A motion for relief from judgment, filed on April 27, 2000, was heard by *Susan D. Ricci,* J.

*Wendy H. Sibbison* for the defendant.

*Mark I. Zarrow* for the plaintiff.

Laurence, J. The former wife, Maureen F. Sappett (wife), appeals from a Probate and Family Court judge's denial of her motion for relief from a judgment that incorporated the parties' separation agreement, which had divided the marital property in a manner she now challenges. Within a year of the April 27, 1999, divorce judgment, she filed the motion, pursuant to Mass. R.Dom.Rel.P. 60(b)(2) and (3) (1975), alleging that her former husband, Eddy C. Gaw (husband), had fraudulently failed dur-

ing the divorce proceedings to disclose an interest in his parents' residence in Clinton that his father had conveyed to him (and his two siblings) in 1990 but that he (and his siblings) had reconveyed to his father in 1997, while the divorce was pending; a one-half interest in his father's summer cottage in Harvard, also conveyed to him (and his brother) by his father in 1990; and a vested pension from his employer. The latter two assets were newly discovered, the wife asserted, during postjudgment discovery in connection with her rule 60(b) motion.[1]

After hearing testimony from the parties and considering the deposition testimony of the husband's father and an affidavit from the father's attorney, the Probate Court judge (who had also presided over the parties' divorce proceeding) denied the wife's motion on the following findings: (1) the Clinton property had been transferred by the father to the husband and his siblings for estate planning purposes (particularly with a view to avoiding its inclusion as an asset should the father have to enter a nursing home), and it had never been intended that the husband or his siblings would have any proprietary interest in the property, the father intending to use it exclusively and indefinitely and the husband having omitted it from his financial statements because he did not believe he had any actual interest in the property; (2) the transfer of one-half of the share of stock representing the father's interest in the Harvard property[2] to the husband (at the same time that the other half was transferred to the husband's brother) had occurred prior to the marriage, had

---

[1]The separation agreement covered four other pieces of real estate, including the marital home, all identified by the husband in financial statements filed with the Probate Court. The husband received the two pieces of jointly owned real estate, while the wife retained the two properties that stood in her name alone. The separation agreement stated that "[t]he Parties represent and acknowledge that each has fully described his or her assets and liabilities to the other Party to the best of his or her knowledge and ability, both orally and otherwise and by exchange of . . . [Probate Court] Financial Statements . . . ." The separation agreement also included a waiver by the wife of any claim or interest "in the Husband's 401K plan or other pension or retirement benefit."

[2]The Harvard property was an unwinterized cottage on part of a parcel owned by a corporation formed by fifteen property owners, including the husband's father, each of whom received one share of stock in the corporation representing their interest. The husband received a one-half share of that stock by the transfer.

similarly been the product of the father's estate planning concerns ("lest there be nursing home claims should he fall ill"), and, although the husband used and enjoyed the property (along with his father and brother), paid his share of the real estate tax bills, and attended some annual meetings of the corporation, his more active involvement with that property after the transfer had occurred not because it was intended or the husband believed that he had a legal interest in it, but rather because of the need to assist his aging father financially in his father's retirement on a reduced income; (3) although the husband did not explicitly disclose his pension on any of the financial statements filed with the court,[3] his response to an interrogatory propounded by the wife in the course of the divorce, requesting information about his participation in any pension or other retirement benefit plans, had attached the two most recent pension statements he had received from his employer, which stated that, as of December 31, 1993, his "pension status" was "active," and would yield a "projected monthly retirement benefit" of $998.88 at age sixty-five (in 2012).

The judge concluded on these findings that (1) the husband's pension was not "newly discovered evidence" under rule 60(b)(2) because it had in fact been disclosed during discovery to the wife, who could have pursued the issue with reasonable diligence, and, in any event, more explicit disclosure of its existence would not have sufficiently changed the outcome of the property division and should not disrupt the finality of the divorce judgment, since the wife would have been entitled at most to only one-half of the five-eighteenths of the pension accrued during the marriage; (2) prejudgment disclosure of the Clinton and Harvard properties would not have affected the outcome of the case, in light of the fact that their transfers to the husband had been effected solely for his father's estate planning purposes, because of which, the judge stated, she would have exercised her discretion to exclude them from division under G. L. c. 208, § 34; and (3) the wife's evidence did

---

[3]The judge opined that he may have confused his disclosed 401(k) plan with his pension, since he received annual statements regarding the 401(k) plan but none as to the pension for many years.

not clearly and convincingly demonstrate the kind of calculated, fraudulent conduct that warrants relief under rule 60(b)(3), but rather the evidence established that the nondisclosure was the product of the husband's understanding of his facilitating his father's estate planning and not of a deliberate plan to defraud the wife or the court. We discern no error in the judge's denial of the wife's rule 60(b) motion.

1. As to the husband's nondisclosure of his pension, the judge correctly concluded that the existence of the pension did not constitute newly discovered evidence warranting relief under rule 60(b)(2), since it was in fact revealed to the wife in the course of prejudgment discovery. The evidence, being thus available, could have been explored by the wife (at all times represented by counsel) prior to the judgment in the exercise of reasonable diligence. See *DeLuca* v. *Boston Elev. Ry.*, 312 Mass. 495, 497 (1942); *Poskus* v. *Lombardo's of Randolph, Inc.*, 48 Mass. App. Ct. 527, 528-529 (2000).[4] Cf. *Knott* v. *Racicot*, 442 Mass. 314, 325 (2004).

2. The judge's discretionary conclusion[5] that the wife had failed to demonstrate, by clear and convincing evidence (as was her burden, *Care and Protection of Georgette*, 54 Mass. App.

---

[4]The wife conceded that before the divorce was finalized she had reviewed the husband's answers to her interrogatories, which included the husband's pension statements as attachments. The wife's unsupported protestation that the judge erred as matter of law because it was unreasonable to hold her to a standard of diligence when the pension was a "needle in a haystack" hidden "in a ream of material" apparently related to the husband's 401(k) plan rings hollow. The two pension statements were among only thirty-two documents attached to the interrogatory answers, which the wife had nearly three years to examine. The wife's additional, equally unsupported contention that the judge legally erred in concluding, as an alternative ground, that the existence of the pension would not have changed the outcome of the property division, is similarly unconvincing, in light of the fact that the wife voluntarily waived her rights to the husband's 401(k) plan that she knew had $35,000 to $45,000 in it at the time of the judgment, whereas her interest in the pension would have been as little as $140 per month at his retirement in 2012 and presumably of much less present value as of the date of the judgment in 1999. See *Early* v. *Early*, 413 Mass. 720, 725-726 (1992). Even if the judge's alternative basis was faulty, however, her conclusion that this was not a case involving newly discovered evidence for rule 60(b)(2) purposes was correct.

[5]Appellate courts accord great deference to a trial judge's extensive discretion when denying a motion under rule 60(b). See *Care and Protection of Georgette*, 54 Mass. App. Ct. 778, 787 (2002), *S.C.*, 439 Mass. 28 (2003).

Ct. 778, 787 [2002], *S.C.*, 439 Mass. 28 [2003]), that the husband's failure to list the Clinton and Harvard properties as assets was the result of fraud, rests upon the judge's findings described above. Those findings were not only supported by evidence in the record but, more significantly, rested almost entirely upon her assessment of the parties' and witnesses' credibility, which we must accord particular deference, given the realities that the trial judge, "by virtue of [her] firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence," and that an appellate court will not reverse the judge's decision to believe one witness rather than another unless that choice is convincingly shown to have been plainly wrong. *Fox Tree* v. *Hart-Hanks Communications, Inc.*, 398 Mass. 845, 847 (1986), quoting from *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977). Compare *Knott* v. *Racicot*, 442 Mass. at 326 ("The judge's order on [the] rule 60[b] motion was informed by [her] long involvement with this contentious case and [her] opportunity . . . to assess the credibility of the witnesses").

The wife has failed to demonstrate any plain error or an "arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice in the judge's [rule 60(b)] decision." *Ibid.*, quoting from *Kalenderian* v. *Marden*, 46 Mass. App. Ct. 930, 931 (1999). Her primary assertions — that the judge was clearly erroneous in finding that the husband did not intentionally commit fraud against her or on the court when he did not disclose the Clinton and Harvard properties as his assets, because he believed that his father continued to be their true owner — are entirely conclusory and simply (and unavailingly) based on her disagreement with the judge's credibility assessments.[6] The judge's determination that the circumstances attending the husband's relationship to the Clinton and Harvard

---

[6]The only authorities the wife cites to support her position are two distinguishable attorney discipline cases, *Matter of Neitlich*, 413 Mass. 416 (1992), and *Matter of Finnerty*, 418 Mass. 821 (1994), involving specific findings of those attorneys' knowing concealment and deliberate misrepresentations and relying heavily on the fact that, as lawyers, the respondents manifestly should have known from their training and experience that what they were doing was wrong. We express no opinion on the issue — not presented to or addressed by the judge or argued here — whether the father's

properties were such as to negate any intention that he should receive true ownership interests therein has also not been shown to be vitiated by any error of law. Those circumstances, in fact, support the husband's contention that at most he held the Clinton property pursuant to a resulting trust, which the father could enforce at any time, see 5 Scott & Fratcher, Trusts §§ 404.1, 410 (4th ed. 1989); and also buttress the judge's view, relying on *Williams* v. *Massa*, 431 Mass. 619, 626-627 (2000), and *Baccanti* v. *Morton*, 434 Mass. 787, 798-799 (2001), that whatever actual interest the husband might be deemed to have received in the Harvard property was in the nature of a premarriage gift that should not be subject to division because of the wife's failure to have contributed to its preservation or appreciation during the marital partnership.

3. The wife's argument relying entirely on *Anderson* v. *Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988), that even if she could not prove the husband's intentional fraud in omitting the two properties from his disclosures, she was entitled to relief on the ground that the nondisclosure constituted "other misconduct," which is governed by a less stringent standard under rule 60(b)(3), is also unavailing. In the first place, although she complains that the judge erroneously failed to consider this issue, she did not raise nonfraudulent "other misconduct" as a ground for relief below, or cite *Anderson* v. *Cryovac, Inc.*, *supra*, but rather consistently maintained that the husband had committed intentional fraud on her and on the court by his nondisclosures. A party is not entitled to appellate review of a nonjurisdictional issue or theory never presented to the trial court. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977); *Anthony's Pier Four, Inc.* v. *HBC Assocs.* 411 Mass. 451, 471 n.25 (1991); *R.W. Granger & Sons, Inc.* v. *J & S Insulation, Inc.*, 435 Mass. 66, 73-74 (2001). Nor has she argued, much less demonstrated, that such exceptional circumstances existed here as would justify our discretionary departure from that axiomatic principle of appellate practice (e.g., if the appellant did not have the opportunity to present the issue to the court below, *Atlas Tack Corp.* v. *DiMasi*, 37 Mass. App. Ct. 66, 71

counselled property transactions could be deemed legally questionable or even shams from the perspective of the father's creditors.

[1994]; or "where injustice might otherwise result" because of a limited and imperfect opportunity to present one's case below, *White* v. *White*, 40 Mass. App. Ct. 132, 133 [1996], quoting from *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 111 [1985]; or when it is necessary to reach such an issue in order to provide guidance to the lower courts, *Matter of a R.I. Grand Jury Subpoena*, 414 Mass. 104, 111 [1993]; or because an issue important to the public interest is raised, *McLeod's Case*, 389 Mass. 431, 434 [1983]).

The wife's reliance on *Anderson* v. *Cryovac, Inc., supra*, is, in any event, misplaced. Despite dicta in that case suggesting that for rule 60(b)(3) purposes "misconduct" might, "depending on the circumstances," consist of "innocent or careless" or "accidental" or "lackadaisical" nondisclosure in discovery, *id.* at 923, the holding in *Anderson* was in fact based on more culpable misconduct by the defendant, established by clear and convincing evidence, in the form of failing to disclose and "repeatedly" and "unfairly" suppressing a damaging environmental report it knew existed and was material. *Id.* at 927-929. The judge's findings here, by contrast, revealed lack of deliberate or intentional nondisclosure by the husband, who did not believe, on advice of counsel, that he owned a disclosable interest in the Clinton and Harvard properties.

Moreover, *Anderson* v. *Cryovac, Inc., supra*, did not hold, as the wife suggests, that nondisclosure "misconduct" which is not deliberate or purposeful creates a presumption of harm or a per se basis for vacating the judgment and ordering a new trial. Instead, the court in *Anderson* declared that, to obtain relief, it must be demonstrated how the challenged behavior "substantially interfered" with the aggrieved party's ability to protect his or her interests. *Id.* at 924-926. Compare *Anisgard* v. *Bray*, 11 Mass. App. Ct. 726, 731 (1981) (even "inexcusable and reprehensible" nonfraudulent misconduct that might ordinarily be the basis for a successful motion under rule 60[b][3] does not justify relief when the movant was not prevented from presenting the merits of her case and the judge's denial of the motion indicated that the misconduct had no impact on her decision). Beyond conclusory assertions that the husband's failure to disclose the assets "substantially interfered with the

settlement process," the wife has failed to satisfy that standard. She never testified or presented expert opinion that her approach to the settlement agreement would have changed or that she would have demanded more had she known of the two properties, and she presented no evidence as to their value as of the date of the divorce judgment.

That it is inferable that the Harvard property had some net value[7] (the husband's attorney acknowledged that its value was not "de minimis") does not advance the wife's cause. In light of the judge's conclusion that in her discretion she would not have divided the husband's premarital one-half share between the parties, even had she deemed it his property, because the wife had contributed nothing to its acquisition and preservation, the wife had the burden under *Anderson* v. *Cryovac, Inc., supra*, to demonstrate by a preponderance of evidence — and with greater specificity than her conclusory protestations ("his nondisclosure of his own separate property obviously had a substantial, negative impact on the Wife's full and fair settlement preparations," and "[t]here is no question that [disclosure of the assets] . . . would have made a difference in how the Wife's counsel approached settlement") — that the judge erred in that discretionary determination. Compare *Anderson*, 862 F.2d at 926-927, 930-931. Her contention that the judge "applied the wrong . . . outcome-oriented standard" in concluding that disclosure of this asset would not have changed the ultimate discretionary division of assets misapplies *Anderson*. It merely assumes, without proving, interference with her preparations and presentations, whereas *Anderson* held that the burden to establish actual, non-presumptive, substantial interference was on the movant in cases, like this one, not involving a deliberate, wrongful intent motivating the nondisclosure. See *id.* at 924-926, 932.

---

[7]As to the husband's one-half share of the corporation that owned the land on which Harvard cottage stood, which the judge did acknowledge, contrary to the husband's erroneous assertions, was "part of the marital estate," the parcel was assessed as worth $41,100 as of the date of the divorce, but uncontradicted evidence from the treasurer of the corporation established that the building was in poor condition, requiring substantial repairs (including a new roof), and had an unapproved septic system not in compliance with the requirements of Title 5 of the State Environmental Code, 310 Code Mass. Regs. §§ 15.00 et seq. (1995).

The wife's position that the judge erred in applying an "outcome-oriented" test in assessing the impact of the nondisclosure also rests on the mistaken assumption that the judge had no legal basis for her conclusions as to asset division because she supposedly never considered the statutory criteria under G. L. c. 208, § 34. To the contrary, the judge, in approving the parties' separation agreement, which was incorporated into the final judgment, explicitly exercised her independent duty to ensure the fairness and reasonableness of that division in accordance with the statutory factors, and the wife points to no authority requiring the judge to perform that duty de novo in the context of a postjudgment motion, or suggesting that the judge's challenged determination (that the original division of the marital property remained equitable in the circumstances) was an abuse of discretion or without legal basis. See *Krapf* v. *Krapf*, 439 Mass. 97, 104 (2003). Cf. *Barry* v. *Barry*, 409 Mass. 727, 732-733 (1991), and cases cited (judge's decision in a postjudgment proceeding may reflect an implicit consideration of the fairness and reasonableness of the judgment supporting its continued finality).

"Parties to a separation agreement [do] stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations." *Krapf* v. *Krapf*, 439 Mass. at 103. However, the judge's findings and conclusions here establish that, to the extent the husband's challenged nondisclosures fell short of that exalted standard, they were nonculpable in the circumstances, and their consequences did not impair the fairness and reasonableness of the equitable division of the marital property, which "cannot be considered in a vacuum." *Id.* at 104. The judge in these proceedings was contemporaneously presented with a controversy over the wife's prolonged, deliberate, and unjustified refusal to convey to the husband the properties she had agreed to transfer to him in the separation agreement. Her conduct constituted clear and unequivocal disobedience to court orders for which the judge held her, on the husband's complaint, in contempt. It is well established that a Probate Court may, under general principles of equity jurisprudence, deny relief to a

party seeking enforcement of any aspect of a separation agree-
ment (see note 1, *supra,* regarding the parties' disclosure
representations) where that party has herself engaged in inequit-
able conduct that constitutes an evasion of the spirit of the
bargain or that injures or destroys the right of the other party to
receive the expected fruits of the agreement. See *Shikes* v. *Ga-
belnick,* 273 Mass. 201, 206-207 (1930); *Knox* v. *Remick,* 371
Mass. 433, 437 (1976); *Nile* v. *Nile,* 432 Mass. 390, 398-399
(2000); *Krapf* v. *Krapf,* 439 Mass. at 103-104, 106-107; *Larson*
v. *Larson,* 37 Mass. App. Ct. 106, 109-110 (1994); *Lundgren* v.
*Gray,* 41 Mass. App. Ct. 451, 458 (1996); *Keystone Driller Co.*
v. *General Excavator Co.,* 290 U.S. 240, 245 (1933); *Precision
Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co.,* 324
U.S. 806, 814-815 (1945). Cf. *Abbott Labs.* v. *Gardner,* 387
U.S. 136, 155 (1967).[8]

In sum, the wife has failed to sustain her heavy appellate
burden of demonstrating that the judge's May 31, 2002, deci-
sion constituted error of law or an abuse of her broad discretion
in exercising her power to fashion equitable relief in the
particular circumstances of postdivorce controversies. We
conclude that, far from being infected by legal error or arbitrary
or capricious action that no conscientious judge could reason-
ably have taken, see *Massachusetts Assn. of Minority Law
Enforcement Officers* v. *Abban,* 434 Mass. 256, 266 (2001), the
challenged order reflects an appropriately high degree of care,
close attention to the facts and the record evidence, and fidelity

---

[8]The wife complains that the judge never addressed her motion alleging
that the husband (along with his two siblings) conveyed the Clinton property
back to his father in 1997, while the divorce was pending, in fraudulent viola-
tion of a restraining order that the parties not transfer any real estate during
the proceeding. Although there is no question that the husband's action was
improper and could have merited sanctioning by the judge, the judge's find-
ings as to the estate planning motivation for both the 1990 transfer and the
1997 retransfer (the fact of which she explicitly acknowledged in her deci-
sion), as to the credibility of the husband's father's and the father's attorney's
versions of the facts relating to the property transfers, as to the lack of
fraudulent intent on the husband's part, and as to the husband's bona fide
belief that he had no real interest in the property sufficiently support the
judge's implicit equitable determination that the 1997 transaction ultimately
warranted no sanction against the husband or relief for the wife.

to applicable legal and equitable principles on the part of the judge in a discerning discharge of her authority on this record.

*Order denying motion for relief
from judgment affirmed.*