The present dispute arises from the purchase, development, and sale of property, through a nominee trust, on Pine Ridge Road in Newton. On July 2, 2014, the plaintiff, Peter L. Murphy, commenced an action in the Superior Court against Stephen Vona, individually and in his capacity as trustee of 181 Pineridge Realty Trust (trust), seeking an accounting of the trust's funds around the time of the sale of the Pine Ridge Road property. Vona filed counterclaims for declaratory judgment, indemnification, breach of contract, breach of fiduciary duty, invasion of privacy, and trespass and conversion. After a bench trial in June of 2016, judgment entered in favor of Murphy on his complaint for an accounting. Judgment entered in favor of Vona on his counterclaims for invasion of privacy and for trespass, and in favor of Murphy on the remaining counterclaims. The judge subsequently denied Vona's motion to amend the final judgment. On appeal, Vona contends that the judge erred in (1) finding that he was personally liable on a $150,000 loan from a real estate investor; (2) concluding that he had failed to equalize the preacquisition capital contributions made by the parties; (3) relying on an unqualified expert witness to determine the construction costs for the Pine Ridge Road project; (4) finding that Murphy did not breach his agreement with him by abandoning the project; and (5) denying his posttrial motion to amend the judgment. We clarify the extent to which Murphy is entitled to prejudgment interest.
1. Background. We summarize the relevant facts as found by the judge in her comprehensive written decision, reserving some details for our discussion of the issues. In early 2011, Vona, a real estate developer, and Murphy, a coffee shop owner, decided to purchase the Pine Ridge Road property, divide it into three lots, renovate the existing house located on one lot, and build two additional homes, one on each new lot. They orally agreed that they would contribute equal amounts of capital towards the property's acquisition, would both work on the Pine Ridge Road project, and would not take any payment for the services they provided. Vona signed the purchase and sale agreement for the property. He contributed $75,000 towards the deposit, and Murphy paid $25,000.
Vona then executed a declaration of trust establishing the trust for the purposes of holding legal title to the Pine Ridge Road property for the benefit of the trust's beneficiaries, and engaging in necessarily incidental functions. Vona, who was the sole trustee, had a seventy percent beneficial interest in the trust, and Murphy had a thirty percent beneficial interest. Among other matters, the declaration of trust did not permit Vona to "borrow money, sell, mortgage or otherwise dispose of all or any part of the Trust Premises" without Murphy's consent.
As the closing date for the Pine Ridge Road property approached, Vona did not have the money he needed for his share of the down payment. Consequently, unbeknownst to Murphy, Vona obtained a loan from a real estate investor, Mark Schwarz, in the amount of $150,000 (Schwarz loan). Dedham Savings (bank) agreed to finance the Pine Ridge Road project and committed to lending the trust $3,584,000, which was secured by a mortgage on the property. Vona elected not to purchase title insurance. The trust acquired the Pine Ridge Road property for $2,200,000. The payment at closing consisted of $1,650,000 from the bank, $390,000 from Murphy, and $79,441.94 from Vona.
Work began on the Pine Ridge Road property in September of 2011. Eight to nine months later, around the time of the closing on the first house, the prospective purchasers discovered a problem with the title and cancelled the closing. The title problem, which took two years to resolve, delayed the sale of the homes, caused the trust to incur significant unanticipated expenses, lengthened the duration of the entire project, and substantially reduced the net sale proceeds. Murphy, who was experiencing financial hardship, became increasingly frustrated and angry with Vona over the delays and unexpected costs. By April of 2013, Murphy had begun to work on another real estate development project, returning to Pine Ridge Road only to perform small jobs at Vona's request. The three completed homes sold for $1,835,000, $2,125,000, and $2,190,000, respectively, amounts which were less than the offers that had been made prior to the discovery of the title problem.
As sole trustee, Vona had exclusive control of the trust's finances and the bank accounts relating to the project. The judge found that, at best, Vona's record-keeping was "very sloppy." Vona used funds from the trust's bank accounts to pay for expenses associated with his other real estate development projects, and, conversely, he used the bank accounts for those other projects to pay for expenses associated with the Pine Ridge Road project. He also charged expenses for all of his projects to one credit card, and he commingled the bills, invoices, and receipts for his various projects. Once the trust began to receive loan disbursements from the bank, Vona started to "reimburse" himself for purported expenses by writing checks or electronically transferring funds from the trust's accounts to his personal or business accounts.
In December of 2013, while at the worksite, Murphy entered Vona's truck and discovered what he thought was a ledger sheet for the trust, which he interpreted as showing suspicious payments from the trust to entities that were not related to the Pine Ridge Road project. Knowing that Vona kept the project's account ledger on the desk in his home office, Murphy entered Vona's house and photographed pages from the ledger without permission to do so. Upset by his discoveries, Murphy commenced the present action, alleging that Vona had improperly spent the trust's funds on personal expenses, seeking to enjoin Vona from "selling, transferring, conveying, removing or otherwise divesting the Trust of its assets," and requesting a true and accurate accounting of all of the trust's funds.
Following a bench trial, the judge determined, as an initial matter, that Vona and Murphy were coventurers in the Pine Ridge Road project. Turning to Murphy's request for an accounting, the judge stated that because Vona had a fiduciary duty to Murphy, Vona was required to account for all of the funds that should be in the possession of the trust, and to demonstrate that he did not misappropriate any such funds. Based on the credible evidence, the judge concluded that Vona had failed to account for his purported capital contributions, the general construction costs, or any trust property in the manner required by Massachusetts law. More specifically, the judge stated that Vona had not maintained clear and accurate records pertaining to the administration of the trust, and had regularly commingled funds from his various real estate development projects, making it impossible to determine whether particular financial transactions were related to the trust. The judge further found that there was considerable evidence of expenses being factored into general construction costs that plainly were not attributable to the trust, such as payments on the Schwarz loan. The judge determined that Vona, in his individual capacity, owed the trust $1,079,721.56, as repayment for improper expenses.[3] The judge denied Vona's motion to amend the judgment. The present appeal ensued.
2. Discussion. a. Standard of review. In civil actions tried without a jury, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). See Kendall v. Selvaggio, 413 Mass. 619, 620 (1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 620-621, quoting from J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 792 (1986).
b. Vona's personal liability on the Schwarz loan. Vona contends that the judge erred in determining that he was personally liable for the Schwarz loan. He asserts that the loan was for the benefit of the Pine Ridge Road project, that it was intended to cover initial expenses prior to the receipt of loan disbursements from the bank, and that Murphy had signed a promissory note for the loan in October of 2011. Based on this evidence, Vona argues that the portion of the accounting pertaining to the Schwarz loan and related interest payments must be reversed. We disagree.
As the closing date for the purchase of the Pine Ridge Road property approached, Vona did not have the money he needed for his share of the down payment. Vona secured the Schwarz loan pursuant to a short-term promissory note dated July 26, 2011, that was signed by Vona in his individual capacity, and the funds were transferred to a bank account associated with his own business, not to an account for the trust, which had not yet been established. The judge found that Murphy did not know that Vona had borrowed $150,000 from Schwarz.
Several months later, Vona proposed to Murphy that they borrow money from Schwarz so that construction on the Pine Ridge Road project could begin, and Murphy could be reimbursed for his overpayment of his preacquisition capital contribution. It was Murphy's understanding that this would be a personal loan. In October of 2011, Vona and Murphy signed a short-term promissory note in favor of Schwarz for $150,000. As the judge properly found, this note was merely a reissuance of the note that Vona had personally signed on July 26, 2011, albeit now with an extended repayment period and a higher interest rate. Schwarz did not provide any additional funds. We conclude that the judge's finding that the Schwarz loan was Vona's personal obligation was not clearly erroneous.
c. Equalization of preacquisition capital contributions. Vona argues that the judge's determination that he must personally reimburse Murphy in the amount of $130,279.03 to equalize the parties' preacquisition capital contributions to the Pine Ridge Road project was clearly erroneous. Vona asserts that, after the closing on the Pine Ridge Road property, he made several payments to Murphy and contributions to the trust which more than offset Murphy's overpayment of preacquisition capital. Therefore, Vona continues, he has satisfied his reimbursement obligation to Murphy.
It is undisputed that when the parties decided to purchase the Pine Ridge Road property, they agreed that they would contribute equal amounts of capital towards its acquisition. Because the parties' combined preacquisition capital contributions totaled $569,441.94 (comprised of a $100,000 purchase and sale deposit, and a $469,441.94 down payment at closing), Vona and Murphy were each obligated to pay $284,720.97. Murphy's preacquisition capital contribution totaled $415,000 (a $25,000 deposit, and a $390,000 down payment), whereas Vona's preacquisition capital contribution totaled $154,441.94 (a $75,000 deposit, and a $79,441.94 down payment). Consequently, Vona owed Murphy $130,279.03 to equalize their preacquisition capital contributions. The judge found that in October of 2011, Vona paid Murphy $50,000 from the funds that he had personally received as part of the Schwarz loan; the judge credited Vona for this payment, thereby reducing the amount that Vona owed Murphy to $80,279.03.
Where Vona challenges the judge's purported failure to credit him for additional payments made to offset the parties' unequal preacquisition capital contributions, Vona was required to show that he made such payments to Murphy from his own funds. The judge properly found that Vona's financial record-keeping was extremely "sloppy," that Vona regularly commingled his personal funds with those of the trust and of his other real estate development projects, and that it was virtually impossible to ascertain the source of various payments that Vona claimed to have made. The judge was not required to simply accept Vona's testimony regarding additional payments. See New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977) ("[I]t is the trial judge who, by virtue of [her] firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence"). We conclude that the judge's finding that Vona must personally reimburse Murphy in the amount of $80,279.03 to equalize the parties' preacquisition capital contributions was not clearly erroneous.
d. Determination of construction costs. Vona contends that the judge erred in relying on an expert report from Schwarz to ascertain the general construction costs for the Pine Ridge Road project. Based on that report, the judge found that Vona was liable to the trust in the amount of $913,515.56, which was the difference between the costs as determined by Vona's expert witness ($2,633,600.56), and the costs as determined by Schwarz ($1,720,085). Vona also asserts that Schwarz's report failed to take into account a number of construction-related expenses, including costs to settle a zoning issue, carrying costs resulting from the title problem, and costs to remove the customizations of two homes. In Vona's view, the only qualified expert was his expert, and the judge's rejection of his opinion was clearly erroneous. We disagree.[4]
It is well established that a trustee has a duty "to keep clear and accurate accounts with respect to the administration of [a] trust[ ]." Akin v. Warner, 318 Mass. 669, 674 (1945). See Briggs v. Crowley, 352 Mass. 194, 199-200 (1967). The trustee bears the burden of accounting for all of the assets in the trust and demonstrating that there was no misappropriation of or failure to preserve such assets. See Akin v. Warner, supra at 674-675; Rugo v. Rugo, 325 Mass. 612, 617 (1950). A trustee who fails to accurately account for the handling of trust property "must stand the loss." Markus v. Markus, 331 Mass. 394, 399 (1954). See Attorney Gen. v. Bedard, 218 Mass. 378, 385-386 (1914) (trustees "must be charged with everything for which they have not properly accounted" because it is their obligation "to keep the trust fund distinguished from other moneys in their hands"). In an action for an accounting, a court will adjudicate the amount of funds that should be in the possession of a trust, and will determine any amounts for which the trustee is liable to the trust or its beneficiaries. See Milbank v. J.C. Littlefield, Inc., 310 Mass. 55, 61 (1941).
Here, the judge concluded that Vona had failed to meet his burden of accounting for general construction costs. Vona had not maintained clear and accurate records for the trust, he had regularly commingled funds from his various real estate development projects, and he had factored expenses into general construction costs that were not attributable to the trust. As the judge correctly noted, the burden was on Vona, not on the court, to marshal the evidence in a clear and comprehensible fashion. The judge was not required to credit Vona's expert's testimony and report, particularly where his financial analysis was not comprehensive in scope. See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509-510 (1997) ; Gaw v. Sappett, 62 Mass. App. Ct. 405, 409 (2004).
Contrary to Vona's argument, the judge did not disqualify Schwarz as an expert witness. Rather, the judge stated that Schwarz was not an accounting expert, and she found that he was biased due to a prior relationship with Murphy, but she relied on his expert opinion as to the costs of renovation and construction for the Pine Ridge Road project. It was within the judge's discretion to do so. See Leibovich v. Antonellis, 410 Mass. 568, 571-573 (1991). See also New England Tel. & Tel. Co. v. Assessors of Boston, 392 Mass. 865, 870 (1984). Given that Vona, not Murphy, had the burden of accounting for the trust's funds, the judge properly could decide that the shortcomings in Schwarz's testimony were inconsequential. See Lenehan v. Travers, 288 Mass. 156, 159 (1934). We conclude that the judge did not err in determining the general construction costs.
e. Murphy's abandonment of the project. Vona argues that, contrary to the parties' agreement to work on the Pine Ridge Road project to completion, Murphy failed to contribute any time or sweat equity from April of 2013 until June of 2014, thereby effectively abandoning the project. Vona requests that we remand the matter so that the judge can make findings as to the damages he sustained. We decline to do so.
Contrary to Vona's assertion, the judge did not determine that Murphy had abandoned the Pine Ridge Road project. Instead, the judge found that Vona had elected not to purchase title insurance; that the title problem took two years to resolve; that the delay caused Murphy to become frustrated, angry, and financially strapped; that Murphy undertook another real estate project in April of 2013; that he periodically returned to Pine Ridge Road when Vona asked him to perform small jobs; and that Murphy returned to the project once the title problem was resolved. Moreover, with respect to Vona's counterclaims, the judge concluded that Murphy did not breach either a fiduciary duty to Vona or an implied covenant of good faith and fair dealing. It was the province of the judge to accept the testimony of Murphy that he did not abandon the Pine Ridge Road project. See Gaw v. Sappett, 62 Mass. App. Ct. at 409. We add that the judge determined that Vona was entitled to reimbursement for reasonable warranty work that he performed, without Murphy, after the houses were sold. There was no error.
f. Motion to amend the final judgment. Finally, Vona claims that the judge erred in denying his motion to amend the judgment because Murphy was not entitled to prejudgment interest with respect to the accounting. In the final judgment, the judge stated that funds shall be distributed as specified, "subject to interest as provided by law." The judge first detailed the amounts of money that Vona, either in his individual capacity or in his trustee capacity, was obligated to pay Murphy and the trust. She did not specifically mention interest with regard to these distributions. The judge then set forth the amount of money that Murphy owed Vona as damages for invasion of privacy and trespass, and she stated that the court would compute statutory interest from the date of the counterclaim (August 26, 2014).
We recognize that a request for an accounting is an equitable proceeding. See Berwin v. Cable, 313 Mass. 431, 435-437 (1943) ; Lembo v. Casaly, 5 Mass. App. Ct. 240, 240-241 (1977). See also Nolan & Sartorio, Equitable Remedies § 19.1 (3d ed. 2007) ("[A]ctions for an accounting are cognizable under the general principles of equity jurisprudence"). The final judgment in such an action should "state and adjudicate the account and show the balance due from one party to the other." Milbank v. J.C. Littlefield, Inc., 310 Mass. at 61. See DiManno v. DiManno, 332 Mass. 709, 712 (1955).
Here, apart from adjudicating an accounting of the trust's funds, the judge also determined that Murphy was entitled to reimbursement from Vona for preacquisition and postacquisition capital contributions.[5] Such reimbursements can fairly be characterized as "damages." See Rood v. Newberg, 48 Mass. App. Ct. 185, 195 (1999) (defining meaning and purpose of damages). General Laws c. 231, § 6H, provides that "[i]n any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law," interest shall be added thereon at the rate set forth in G. L. c. 231, § 6B. It is well established that prejudgment interest is awarded "to compensate a damaged party for the loss of use or the unlawful detention of money." Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988). See Rood v. Newberg, supra at 194-195. "The damaged party is entitled to a return on the money that the party would have had but for the other party's wrongdoing." McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 717 (1990). A judge does have the authority not to award prejudgment interest where it would result in a windfall to the recipient. See Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 841-842 (1986) ; Nissan Autos. of Marlborough, Inc. v. Glick, 62 Mass. App. Ct. 302, 311 (2004). In this case, we do not view an award of prejudgment interest as constituting a windfall.
3. Conclusion. For the foregoing reasons, we vacate, in part, the order denying the motion to amend. The final judgment entered on April 21, 2017, shall be modified to clarify that prejudgment interest shall be added to the amounts set forth in parts 1A and 1C of the judgment. Prejudgment interest on the amounts set forth in parts 3 and 4 of the judgment shall be awarded from from the date of the counterclaim. In all other respects, the judgment and order are affirmed. As requested, Murphy is entitled to the costs of this appeal. See Mass.R.A.P. 26, as amended, 378 Mass. 925 (1979).
So ordered.
Vacated in part; affirmed in part.

The judge also determined that (1) Vona, in his individual capacity, owed Murphy $80,279.03 in satisfaction of the parties' agreement to contribute equal amounts of preacquisition capital; (2) Vona, as trustee, owed Murphy $238,145.52 as reimbursement for his outstanding preacquisition and postacquisition capital contributions; (3) Vona, as trustee, owed Murphy $406,006.85, which represented Murphy's thirty percent beneficial interest in the trust; (4) Murphy owed Vona $5,000 in damages on Vona's counterclaim for invasion of privacy; and (5) Murphy owed Vona $100 in nominal damages on Vona's counterclaim for trespass.

Vona further argues that the judge erred by only addressing "construction costs," and not other expenses of the trust, including mortgage costs, legal fees, closing costs, property taxes, utility costs, and the like. Vona claims that he advanced personal funds for these incidental expenses, and that the judge's failure to credit him for such payments constituted reversible error. Because this claim was raised in a footnote in the brief, it does not rise to the level of appellate argument, and, therefore, we deem it waived. See Mole v. University of Mass., 442 Mass. 582, 603 n.18 (2004).

We view the amounts set forth in parts 1B and 1D of the judgment as providing an accounting, as to which Murphy is not entitled to prejudgment interest.